NATIONAL BANK OF ROYAL OAK v FRYDLEWICZ

1. SECURED TRANSACTIONS—SALES—BULK TRANSFERS—CREDITORS—
   UNIFORM COMMERCIAL CODE.

   Any transfer in bulk not in the ordinary course of business of a
   major part of the materials, supplies, merchandise or other
   inventory of an enterprise subject to article 6 of the Uniform
   Commercial Code is a bulk transfer which is ineffective against
   any creditor of the transferor where the transferee has failed to
   require the transferor to furnish a list of existing creditors
   (MCLA 440.6102[1]; MSA 19.6102[1]).

2. SECURED TRANSACTIONS—SALES—SALE OF INVENTORY—EXTRAORDI-
   NARY TRANSACTIONS—UNIFORM COMMERCIAL CODE—BULK
   TRANSFERS.

   The closing of a retail store and bulk sale of its stock constitutes
   an extraordinary transaction which is a bulk transfer within
   the meaning of the Uniform Commercial Code (MCLA
   440.6102[1]; MSA 19.6102[1]).

3. SECURED TRANSACTIONS—SALES—BULK SALES—UNIFORM COMMER-
   CIAL CODE—PREVENTION OF FRAUD.

   The bulk sales law was promulgated to protect a creditor from a
   merchant, owing debts, who sells out his stock in trade to
   anyone for any price, pockets the proceeds, and disappears
   leaving the creditors unpaid.

4. SECURED TRANSACTIONS—SALES—INVENTORY—BULK TRANSFERS—
   UNIFORM COMMERCIAL CODE—RETAIL OUTLETS—ENTERPRISES.

   A retail outlet owned by a wholesaler may be a separate "enter-
   prise" within the meaning of the statute regulating bulk trans-
   fers and its inventory, rather than that of the wholesaler, may
   be considered when determining whether the outlet has en-

REFERENCES FOR POINTS IN HEADNOTES
[1] 69 Am Jur 2d, Secured Transactions § 466 *et seq.*
[2–4] 68 Am Jur 2d, Secured Transactions § 154 *et seq.*
[5] 68 Am Jur 2d, Secured Transactions § 58.
   69 Am Jur 2d, Secured Transactions § 368.
[6] 77 Am Jur 2d, Vendor and Purchaser § 296.

gaged in a bulk transfer of a major part of inventory (MCLA 440.9301[1][c]; MSA 19.9301[1][c]).

5. Damages—Sales—Fraud—Fair Market Value.

The amount of an award is determined by the fair market value of transferred items where the remedy for a transfer of goods in violation of a security interest is money damages.

6. Vendor and Purchaser—Fraudulent Conveyance—Substance of Transaction—Avoiding Profit.

Michigan law looks to the substance of a transaction to avoid profit from a fraudulent conveyance.

Appeal from Oakland, William P. Hampton, J. Submitted January 12, 1976, at Lansing. (Docket No. 24424.) Decided February 24, 1976.

Complaint by National Bank of Royal Oak against Edward J. Frydlewicz, King Furniture & Appliance Mart, Elizabeth H. Frydlewicz, King Distributors, Inc., and National Unclaimed Furniture Showrooms of Clawson, Incorporated, seeking damages arising from the sale of goods in which plaintiff held a security interest. Judgment for plaintiff. Defendants appeal. Affirmed.

*Field & Zell,* for plaintiff.

*Labarge, Zatkoff & Dinning, P. C.,* for defendant National Unclaimed Furniture Showrooms of Clawson, Incorporated.

Before: N. J. Kaufman, P. J., and T. M. Burns and M. F. Cavanagh, JJ.

Per Curiam. Defendant National Unclaimed Furniture Showrooms (National) appeals a judgment of $17,356.76 granted in plaintiff's favor after a bench trial in Oakland County Circuit Court.

This litigation arose out of the transfer by Ed-

ward Frydlewicz to National of inventory in which plaintiff had a security interest. In December, 1968, Edward Frydlewicz asked plaintiff for a loan in the total amount of $20,027 to pay for inventory for his business, King Furniture & Appliance Mart. This business establishment, located at 126 East 14 Mile Road, Clawson, Michigan, was a retail outlet for King Distributors, Inc., which sold furniture wholesale and was owned and operated by Frydlewicz.

The security agreement gave plaintiff a security interest in all inventory located at King Furniture & Appliance Mart, 126 East 14 Mile Road. The security interest attached on December 31, 1968. Plaintiff filed a financing statement for the inventory with the Oakland County register of deeds. Repayment of the underlying loan was guaranteed by Edward and Elizabeth Frydlewicz, individually, and by King Distributors, Inc., by Edward Frydlewicz its president. The repayment of the loan was to be by 60 monthly installments commencing in February, 1969. Monthly installment payments, totalling $2,670.24, were made as scheduled through September, 1969, after which Frydlewicz was declared bankrupt.

In the interim on March 6, 1969, Frydlewicz contracted with National to lease the King Furniture & Appliance Mart. As a pre-condition to the agreement to lease the premises, National agreed to purchase all of the King Furniture & Appliance Mart Inventory. Accordingly, an item-by-item inventory was conducted by the parties of the merchandise which consisted of damaged furniture and odds and ends. Defendant purchased this entire inventory for $13,603.24. When defendant purchased this inventory and leased the premises in Clawson, it changed the name of the business

establishment to National Unclaimed Furniture Showrooms and removed all of the old King Furniture signs.

When the sale of inventory at King Furniture & Appliance Mart was being negotiated, Frydlewicz verbally represented to defendant that there were no liens of any kind against the inventory. National neither requested a written statement from Frydlewicz that there were no liens against the inventory nor gave notice to anyone of the inventory purchase.

National became aware of plaintiff's security interest in the inventory on May 14, 1970, when plaintiff served National with a writ of attachment against the inventory located at the furniture showroom on 14 Mile Road in Clawson. Apparently, National had made no attempt to investigate whether a security interest existed in the inventory. The stipulated statement of facts indicates that, on prior occasions, National had purchased wholesale lots of merchandise from King Distributors, Inc.

At trial and on appeal, the dispute requires the interaction of the Uniform Commercial Code (UCC) provisions on secured transactions and bulk transfers. Plaintiff's status under article 9 of the UCC, MCLA 440.9101 *et seq.;* MSA 19.9101 *et seq.,* is that of an unperfected secured creditor. Plaintiff failed to perfect its interest when it filed the financing statement with the Oakland County register of deeds rather than with the Secretary of State, as MCLA 440.9401; MSA 19.9401 requires.

National's status is the dispositive issue in the case. Under the instant facts, one of three legal positions could be ascribed to National: (1) a buyer in ordinary course of business, (2) a buyer not in ordinary course of business or (3) a transferee in

bulk. If National is a buyer in the ordinary course of business, UCC 9-307(1), MCLA 440.9307(1); MSA 19.9307(1), would give its interest in the disputed merchandise priority over plaintiff's unperfected security interest. As a buyer not in the ordinary course of business, National's interest would be subordinated to plaintiff's interest.

Normally, as a transferee in bulk, National would be entitled to priority over plaintiff's unperfected security interest. Pursuant to UCC 9-301(1)(c), MCLA 440.9301(1)(c); MSA 19.9301(1)(c), "an unperfected security interest is subordinate to the rights of in the case of goods, * * * , a person who is not a secured party and who is a transferee in bulk". However, National failed to satisfy the requirements necessary under the bulk transfer provisions of UCC, art 6, to assert a claim of priority as a transferee in bulk. Specifically, UCC 6-104(1) requires:

"Except as provided with respect to auction sales (section 6-108), a bulk transfer subject to this article is ineffective against *any creditor* of the *transferor* unless:

"(a) The *transferee requires the transferor to furnish a list of his existing creditors* prepared as stated in this section; and

"(b) The parties prepare a schedule of the property transferred sufficient to identify it; and

"(c) The transferee preserves the list and schedule for 6 months next following the transfer and permits inspection of either or both and copying therefrom at all reasonable hours by any creditor of the transferor, or files the list and schedule in the office of the secretary of state." MCLA 440.6104(1); MSA 19.6104(1). (Emphasis supplied.)

It was undisputed at trial that National did not request Frydlewicz to furnish a list of his creditors.

The trial court found National to be a transferee in bulk and, therefore, to be subordinate to plaintiff's rights in the disputed merchandise. The court relied in part on an admission in National's trial brief that it was not a "buyer in ordinary course of business".

While we do not rely on this ill-conceived admission, we find from the record that National was, as the trial court held, a transferee in bulk. A bulk transfer is

"any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory (section 9-109) of an enterprise subject to this article." MCLA 440.6102(1); MSA 19.6102(1).

The items transferred must be inventory, *i.e.,* held "for sale or lease". MCLA 440.9109(4); MSA 19.9109(4). Here, the furniture transferred clearly represented the entire inventory held for sale by the King Furniture and Appliance Mart.

The transferor enterprise must have as its "principal business * * * the sale of merchandise from stock". MCLA 440.6102(3); MSA 19.6102(3). Here, the transferor was a retail furniture store. The transfer must not be in the ordinary course of the transferor's business, and the items transferred must constitute a "major part" of the transferor's inventory. "Major part" has been defined as "meaning something more than 50%". Coogan, Hogan, Vagts, *Secured Transactions Under the UCC,* § 22.06(1)(c), p 2287. Whether "major" is a quantitative or qualitative determination remains an open question; one which courts have approached on an ad hoc basis. *Id.* Ordinary course means day-to-day operation. The bulk sale must be an extraordinary event, one occurring a few times

in the life of a merchant. *First National Bank of Martinsville v Crone,* 301 NE2d 378 (Ind App, 1973).

"The plain meaning of the statute is that when a storekeeper disposes of a substantial part of his stock in trade in bulk, and selling in bulk sales is not the usual and ordinary way in which he conducts his business from day to day, the sale falls within the statute." *Jubas v Sampsell,* 185 F2d 333, 334 (CA 9, 1950).

The closing of a retail store and bulk sale of its stock, both whole and damaged items, constitutes such an extraordinary transaction. Further, the instant case is prototypical of the situation which the bulk sales law was promulgated to remedy. The law attempts to protect a creditor from a "merchant, owing debts, who sells out his stock in trade to anyone for any price, pockets the proceeds, and disappears leaving the creditors unpaid". UCC § 6-101, Official Comment 2(b). Here Frydlewicz sold his inventory for less than its value and declared bankruptcy. But for the bulk sales law plaintiff might be without a remedy.

Some question exists as to the scope of "enterprise" where, as here, the transferee is a retail outlet owned by a wholesaler. Does "enterprise" represent the entire business or each outlet for purposes of determining whether the sale is of a "major part" of the inventory? In the instant case, "enterprise" must be construed as representing the retail outlet so as to effectuate the purpose enunciated above. Plaintiff's dealings with the transferor, Frydlewicz, concerned only his Appliance & Furniture Mart and its inventory. The Mart was, at all times, considered a separate entity. The interaction of the secured transaction and bulk transfer provisions of the MUCC, there-

fore, require that plaintiff be protected against loss of collateral by the coverage of the bulk transfer notice provisions.

National's second claim on appeal is that the trial court incorrectly calculated National's liability to plaintiff. The court awarded plaintiff $17,356.76. National argues that it is liable to plaintiff for the transferred property or the extent of value of the property in the hands of the transferee, who is acting as a trustee. This value, National claims, is $13,603.24, the amount which National paid to Frydlewicz.

Where the remedy utilized is money damages, the amount of the award is the fair market value of the transferred items. *National Grocer Co v Plotler,* 167 Mich 626; 133 NW 493 (1911), *Watkins v Angus,* 241 Mich 690, 696; 217 NW 894 (1928). National cites the general principle that where no question is raised that the amount paid by the transferee was not the fair value, the amount paid represents the maximum liability. *Cornelius v J & R Motor Supply Corp,* 408 SW2d 781, 784 (Ky, 1971), *Waterman v Perrotta,* 144 Colo 117; 355 P2d 313 (1960). Here, however, the fair market value of the collateral was in issue. As plaintiff notes, the agreed statement of facts shows that National did not pay market value for the furniture. Inasmuch as the bulk transfers law is designed to prevent transfers in defraud of creditors, whenever the transfer is made at less than the wholesale cost, value should automatically be put in question. National paid Frydlewicz an agreed "wholesale cost, less ten per cent". In addition, National set aside, in lieu of bond, merchandise valued at "not less than Twenty Thousand Dollars", rather than $13,603.24, the amount claimed to be the maximum liability. The amount awarded by the court

was within the parties' estimates, and we will not overturn it.

National's final claim is that plaintiff is not entitled to coverage by the bulk transfers law because while the transfer in question was made by King Distributors, Inc., plaintiff's creditor was Edward Frydlewicz, individually. This claim was not raised at trial and is, therefore, not preserved on appeal. *Kahn-Reiss, Inc v Detroit and Northern Savings & Loan Association,* 59 Mich App 1; 228 NW2d 816 (1975). In any case, the facts indicate that Frydlewicz was himself the transferor. Further, since King Distributors, Inc. was a guarantor, plaintiff had rights against King also. More importantly, Michigan law has long exhibited a policy of looking to the substance of the transaction to avoid profit from a fraudulent conveyance. See *Pierson & Hough Co v Noret,* 154 Mich 267; 117 NW 644 (1908).

Affirmed. Costs to plaintiff.