MID–AMERICA INDUSTRIES, INC., Appellant,

v.

Harold L. KETCHIE, Appellee.

No. 67718.

Supreme Court of Oklahoma.

Jan. 10, 1989.

Petersen Associates, Inc. by Catherine Holland Petersen, Norman, for appellant.

Pence, Housley & Anthony by Roger O. Housley, Norman, for appellee.

HODGES, Justice.

This case of first impression concerns the effect of a transferee's noncompliance with the bulk transfer notice and distribution requirements of article 6 of the Oklahoma Uniform Commercial Code. The trial court held that (1) the sale of an auto parts store's assets was subject to bulk transfer provisions and (2) that the transferee's noncompliance with those provisions resulted in liability to an unsecured creditor of the transferor for the amount of sale proceeds in excess of a properly paid secured debt. We affirm the trial court's decision.

Tommy Williams was the principal officer and sole shareholder of TAW Enterpris-es, Inc. (TAW), doing business as Discount Auto Parts and as Green Light Auto Parts in Norman, Oklahoma. Norman Bank of Commerce (NBC) held a valid perfected security interest in the parts store's inventory which secured a debt of $51,072.90. Williams and TAW also owed Mid–America Industries, Inc. (plaintiff), an unsecured creditor, $26,810.86 for parts purchased on an open account.

In early 1986, Williams and TAW could not meet their financial obligations and NBC filed a petition in receivership. Before a receiver was appointed, however, Williams accepted the offer of Harold Ketchie (defendant) to pay $55,000 for the store's inventory, furniture, fixtures and one of its two vehicles. Defendant's attorney issued a notice of bulk transfer via regular mail dated March 28, 1986. The sale was closed on March 31, 1986, and the petition in receivership was dismissed. At closing, $51,072.90 was paid to NBC for the release of its security interest. The remaining $3,927.10 was paid to Williams who used the money to pay taxes of TAW. No sale proceeds were paid to plaintiff.

Immediately upon closing, defendant took possession of the property sold to him. He commingled, restocked, reboxed, and purchased additional inventory without maintaining inventory control records necessary to identify the TAW inventory. Approximately $18,000 to $20,000 worth of inventory purchased from plaintiff was included in the assets sold to defendant.

Plaintiff filed suit against Williams and TAW for the unpaid account balance and against defendant for noncompliance with the requirements imposed upon a bulk transferee. Judgment by default was entered for plaintiff against TAW in the amount of $30,917.91, the unpaid account balance, plus interest and costs. The action against defendant was tried to the court on October 20, 1986. Plaintiff was awarded $3,927.10, the amount of sale proceeds in excess of NBC's secured interest. The trial court ruled that the sale to defendant was a bulk transfer and that defendant had failed to comply with the no-

tice to creditors provisions for bulk transferees.

Plaintiff appealed and argues that because Williams and TAW are insolvent, defendant should have been held liable for the entire amount of default judgment against them as a result of defendant's noncompliance with the bulk transfer notice requirements. Defendant maintains that this sale of assets fell within an exception to the definition of bulk transfer.

## I.

Bulk transfers are the subject of article 6 of the Oklahoma Uniform Commercial Code (UCC), Okla.Stat. tit. 12A, §§ 6–101 to 6–111 (1981 & Supp.1987) (all UCC references are to the Oklahoma provisions found in title 12A). Comments 2 and 4 to section 6–101 explain that the central purpose of article 6 is to prevent the situation where "[t]he merchant, owing debts who sells out his stock and trade to anyone for any price, pockets the proceeds and disappears leaving his creditors unpaid." Article 6 attempts to prevent this form of commercial fraud by requiring the transferee in a bulk sale to give notice of the transfer to the transferor's creditors. Having advance notice of the pending bulk sale, the creditors can take steps to protect their interests which might include an attempt to enjoin the sale. In addition, the Oklahoma Code comment to section 6–101 points out that "Oklahoma adopted the optional sections of the official text of the Uniform Commercial Code ... which give additional protection to the creditors by imposing on the buyer an obligation to ensure that the money he pays to his indebted seller is in fact applied to pay the seller's debts."

■ Section 6–102(1) defines a bulk transfer as "any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise, other inventory, or services of an enterprise subject to this article." Section 6–102(3) explains that enterprises subject to article 6 include "all those whose principal business is the sale of merchandise from stock." While neither party quarrels with the trial court's deci-

sion that the instant transfer meets this definition, defendant claims the transfer falls within the section 6–103(3) exception from article 6 coverage for "[t]ransfers in settlement or realization of a lien or other security interests."

The Oklahoma Code comment to section 6–103 explains that "[t]he reason for this exclusion is that creditors are given adequate protection under article 9." The exception applies only if settlement of a security interest is the purpose of the transfer. If the payment of a secured debt is merely incidental to the transfer, this exception to article 6 requirements is inapplicable. Standing alone, the payment of a secured debt with sale proceeds is not sufficient to establish that the transfer falls within the settlement of a security interest exception.

While no Oklahoma decisions have construed the section 6–103(3) exception, some courts have required that the transfer be made directly to the secured creditor. *See John Boyle & Co. v. Colorado Patio & Awning,* 654 P.2d 335, 336 (Colo.Ct.App. 1982) (director and sole shareholder of transferee corporation did not hold security interest and had to comply with article 6 requirements); *Starman v. John Wolfe, Inc.,* 490 S.W.2d 377, 382 (Mo.Ct.App.1973) ("To be an exempt transfer ... the transfer should be made to the holder of the security interest and not to the transferee for the benefit of the security interest holder"). Other courts have held the exception applicable only when there are no cash proceeds of the sale remaining after payment of the secured creditor irrespective of whether the transfer was made directly to the secured party. *See Ouachita Electric Cooperative v. Evans—St. Clair,* 12 Ark. App. 171, 175, 672 S.W.2d 660, 663 (1984) (consideration paid by transferee was used entirely to pay secured creditor and did not harm position of any unsecured creditor); *Techsonic Industries v. Barney's Bassin' Shop,* 621 S.W.2d 332, 334 (Mo.Ct.App. 1981) (transfer distinguishable from *Starman,* although not made directly to secured party, because sale was subject to approval of secured lender who received all

sale proceeds); *American Metal Finishers, Inc. v. Palleschi,* 55 A.D.2d 499, 501, 391 N.Y.S.2d 170, 172 (1977) (transfer to designee, who merely took over position of secured creditor, met exception becasue there were "no cash proceeds with which seller could abscond" and thus protective purposes of article 6 were not implicated). No court has applied the exception where a transfer is not made directly to the secured creditor and cash proceeds are left in the hands of the transferor after the secured creditor is paid.

The instant transfer was made to defendant, not to the secured creditor. Additionally, only a portion of the proceeds of the sale was paid to the secured creditor. The remaining sale proceeds were paid to the transferor. Payment of NBC's secured debt was merely an incident of the sale of the parts store assets to defendant. The sale was a bulk transfer not within the section 6–103(3) exception and was subject to the requirements of article 6.

## II.

■ It is undisputed that defendant failed to comply with the article 6 requirements of notice to the transferor's creditors. Defendant failed to give notice at least ten days before making payment or taking possession of the assets as required by section 6–105. The notice was also sent by regular mail when section 6–107 requires delivery personally or by registered mail.

Defendant also failed to comply with section 6–106 which provides in part:

Upon every bulk transfer subject to this article for which new consideration becomes payable except those made by sale at auction it is the duty of the transferee to assure that such consideration is applied so far as necessary to pay those debts of the transferor....

Section 6–106(3) requires that "[i]f the consideration payable is not enough to pay all of the said debts in full distribution shall be made pro rata." At closing, NBC, the secured creditor, was paid. Defendant then paid the balance of the purchase price to Williams rather than discharging his obli-

gation to see that the remaining sale proceeds were paid to creditors of Williams and TAW. Defendant became personally liable for failing to meet the notice and distribution requirements imposed on a bulk transferee.

Personal liability was imposed for noncompliance with article 6 in *Darby v. Ewing's Home Furnishings,* 278 F.Supp. 917 (W.D.Okla.1967). The holding was based on Oklahoma's adoption of the optional section 6–106 requirements. This holding has also been reached in other jurisdictions that have adopted section 6–106. *See Cornelius v. J & R Motor Supply Corp.,* 468 S.W.2d 781 (Ky.1971); *Sbar's Inc. v. New Jersey Art & Craft Distributors,* 205 N.J. Super 516, 501 A.2d 560 (1985); *Hixson v. Pride of Texas Distributing Co.,* 683 S.W.2d 173 (Tex.App.1985); *Anderson & Clayton Co. v. Earnest,* 610 S.W.2d 846 (Tex. Civ.App.1980). Personal liability has also been imposed in jurisdictions where section 6–106 was not adopted. *See Boyle,* 654 P.2d 335; *Moskowitz v. Michaels Artists & Engineering Supplies,* 29 Colo.App. 44, 477 P.2d 465 (1970); *National Bank of Royal Oak v. Frydlewicz,* 67 Mich.App. 417, 241 N.W.2d 471 (1976); *Starman,* 490 S.W.2d 377.

Defendant admits personal liability for noncompliance with the article 6 requirements but disputes plaintiff's argument that defendant should have been held liable for plaintiff's entire claim against TAW. Thus, the precise issue is the extent of personal liability of a noncomplying bulk transferee to a transferor's creditor with a claim greater than the remaining sale proceeds after secured creditors are paid.

It appears that no court has addressed the present situation in which the transferor's unsecured debts exceeded the amount of remaining sale proceeds. However, the cases cited by plaintiff have limited the personal liability of a noncomplying transferee to the purchase price or the fair value of the assets sold. As the *Darby* court noted, a transferee who fails to comply with the bulk transfer requirements "renders himself personally to creditors of transferor for the value of the property

purchased or the amount he paid therefore." 278 F.Supp. at 919.

In the instant transfer, the record presents no indication that the value of the assets was anything other than the purchase price. The extent of defendant's personal liability is therefore $55,000. This amount, however, must be reduced by $51,072.90, the sum paid to satisfy NBC's secured debt.

■ Article 6 neither impairs a valid article 9 security interest nor does it affect article 9 remedies. It does not require that secured and unsecured creditors be treated equally. *Huguelet v. M & M Associates, Inc.*, 375 So.2d 1150, 1151 (Fla.Dist.Ct.App. 1979). Article 6 requires a transferee to provide adequate notice of a bulk transfer and to see that the proceeds are applied to the transferor's debts. The holder of a valid security interest in the transferred assets must be paid first. Unsecured creditors must then be paid. If the remaining sale proceeds are insufficient to pay all the unsecured debts, distribution must be made pro rata as mandated by section 6–106(3).

Although defendant failed to meet the notice and proceeds distribution requirements of article 6, he properly saw that NBC's security interest was satisfied. The total $55,000 liability for noncompliance was thus reduced by $51,722.90. The trial court correctly entered judgment for plaintiff in the amount of $3,927.10.

JUDGMENT OF THE TRIAL COURT AFFIRMED.

HARGRAVE, C.J., and LAVENDER, SIMMS, DOOLIN and KAUGER, JJ., concur.

OPALA, J., concurs in part, dissents in part.