McKAY, Chief Judge.
In this bankruptcy case, Arkla Exploration Company, Rameo NYL 1987 Limited Partnership, RB Operating Company, Lee & Agee, Inc., and XAE Corporation (together, Appellants) appeal a decision of the district court affirming a bankruptcy court’s determination that Norwest Bank of Minneapolis, National Association (Nor-west) has valid security interests under the Oklahoma Uniform Commercial Code in gas sold by Appellants that are superior to any security interests and liens claimed by Appellants under the Oklahoma Oil and Gas Owners’ Lien Act (Lien Act), Okla. Stat.Ann. tit. 52, § 548-548.6.[1] For the reasons set forth below, we affirm.
On September 1, 1987, Norwest executed a security agreement with Spectrum Natural Gas Company (SNGC) for the purpose of securing a loan. The security agreement granted Norwest a security interest in certain property of SNGC then owned and after-acquired, including all inventory. Norwest perfected its security interest by filing a financing statement on September 28,1987, with the Clerk of Oklahoma County, Oklahoma.
On November 4, 1987, Norwest executed a security agreement with Spectrum Gas Systems, Inc. (SGC) for the purpose of securing another loan. This security agreement granted Norwest a security interest in certain property of SGC then owned and after-acquired, including all inventory. Norwest perfected this security interest by filing a financing statement on November 30,1987, with the Clerk of Oklahoma County, Oklahoma.
*658 Appellants, who are interest owners in certain Oklahoma gas wells, sold gas to SNGC and SGC pursuant to gas purchase contracts during June through September 1989. SNGC and SGC resold the gas and received payment, but did not pay the sale proceeds to Appellants. On November 15, 1989, and various dates thereafter, Appellants filed lien notices in accordance with the Lien Act to secure payment for the gas sold to SNGC and SGC.
On November 20, 1989, SNGC and SGC filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Appellants, on February 25, 1990, filed with the bankruptcy court a “Complaint to Determine Lien Priority and Conversion.” On June 19, 1990, Appellants filed an “Objection to Norwest’s Motion for Summary Judgment” in which Appellants challenged the validity of Norwest’s security interests. The bankruptcy court, on July 6, 1990, granted a judgment in favor of Norwest concluding that Norwest’s perfected security interests were superior to any liens filed by Appellants under the Lien Act. The district court affirmed and this appeal followed.
The sole question presented on appeal is whether the Lien Act accords Appellants’ liens priority over Norwest’s security interests even though Norwest’s security interests antedated Appellants’ liens. Appellants rely on section 548.4.C of the Lien Act which provides as follows: “Upon perfection by filing the security interest and lien (authorized under this act) ... shall relate back to and be effective as of the date on which severance occurred and shall take priority over the rights of all persons whose rights or claims arise or attach ... between the time the security interest and lien attaches and the time of filing.” Okla. Stat.Ann. tit. 52, § 548.4.C. According to Appellants, under this provision their liens, once perfected, related back to the date on which the gas sold to SNGC and SGC was removed from the land, and Norwest’s security interests in that gas did not attach and become perfected under the Oklahoma UCC until later, upon delivery of the gas to SNGC and SGC.
Norwest’s position, agreed with by the bankruptcy and district courts, is that the relation back provision of the Lien Act does not undermine security interests under the Oklahoma UCC. Norwest relies on section 548.6.C of the Lien Act which states:
Nothing in this act shall be construed to impair or affect the rights and remedies of any person under the provisions of the Uniform Commercial Code, section 1-101 et seq. of Title 12A of the Oklahoma Statutes, and the provisions of this act shall be deemed cumulative to and not a limitation on or a substitution for any rights or remedies otherwise provided by law to a creditor against his debt- or.
Okla.Stat.Ann. tit. 52, § 548.6.C. According to Norwest, this provision protects its status as a secured party under the Oklahoma UCC from being subordinated to any lien under the Lien Act.
The bankruptcy and district courts’ interpretation of the Lien Act is a legal question which we review de novo. See In re RutiSweetwater, Inc., 836 F.2d 1263, 1266 (10th Cir.1988). There are no reported decisions from Oklahoma interpreting the Lien Act. Therefore, we must look to principles of statutory construction under Oklahoma law and make a reasonable determination as to how the Oklahoma Supreme Court would construe the statute. See In re North Side Lumber Co., 83 B.R. 735, 737 (9th Cir. BAP 1987), aff'd, 865 F.2d 264 (9th Cir.1988).
Under Oklahoma law, the task of interpreting the Lien Act begins with the plain language of the statute. Seventeen Hundred Peoria, Inc. v. City of Tulsa, 422 P.2d 840, 843-44 (Okla.1966). In this case, it is also where the inquiry ends, for “[wjhere [as here] the language of a statute is plain and unambiguous, and its meaning is clear ..., the statute will be accorded the meaning as expressed by the language therein employed.” Cave Springs Pub. Sch. Dist. I. 30 v. Blair, 613 P.2d 1046, 1048 (Okla.1980).
By its terms, section 548.4.C of the Lien Act provides interest owners in oil and gas with a security interest and a lien that, upon perfection, relates back to the date on *659 which the minerals were severed. However, under the unambiguous language of section 548.6.C, a lien authorized under the Lien Act shall not “impair or affect the rights and remedies of any person under the provisions of” the Oklahoma UCC. Thus, as the bankruptcy and district courts held, while the Lien Act, by its clear language, authorizes a lien to secure payment from oil or gas to an interest owner, it also insures that security interests under the Oklahoma UCC are not subordinated to that lien. Any other reading of the Lien Act is simply contrary to the plain language used by the Oklahoma Legislature.
Interpretation of the Lien Act as assuring the priority of security interests under the Oklahoma UCC is further supported by section 548.6.C’s location in the Lien Act after section 548.4.C. Indeed, section 548.6.C is the final section of the Lien Act. The established rule in Oklahoma is that if there is any conflict between two sections of a statute, the last in order of position must prevail. See Earnest, Inc. v. LeGrand, 621 P.2d 1148, 1151 (Okla.1980). Thus, the priority rule set forth in section 548.4.C must be read as restricted by the protections provided by section 548.6.C for persons with interests under the Oklahoma UCC.
Looking at the language of the Lien Act, Appellants contend that while section 548.-6.C expressly protects the “rights and remedies” of persons under the Oklahoma UCC, it does not provide that the “priority” of those “rights and remedies” cannot be impaired. Accepting this argument, however, would require that we ignore certain commercial realities. The practical outcome of a priority conflict is that the winning party (i.e., the party with the prior interest) satisfies himself in full out of the collateral before a subordinate party satisfies himself with what, if anything, is left. Thus, if Norwest’s security interests are subordinated to liens filed later in time by Appellants, then Norwest’s rights and remedies as secured parties under the Oklahoma UCC are impaired or affected. Cf. Mid-America Indus., Inc. v. Ketchie, 767 P.2d 416, 420 (Okla.1989) (remedies under the Oklahoma UCC have not been “impair[ed]” or “affect[ed]” where “the holder of a valid security interest ... must be paid first.”).
Appellants, citing the Lien Act and this court’s decision in Reserve Oil, Inc. v. Dixon, 711 F.2d 951 (10th Cir.1983), also argue that Norwest’s security interests, aside from being subordinate to their liens, are unenforceable against them. Specifically, Appellants contend that SNGC and SGC never acquired rights in the gas delivered by Appellants to which Norwest’s security interest could attach under Oklahoma law[2] because Appellants, until payment by SNGC and SGC, retained an equitable interest in the gas. However, nothing in the Lien Act would suggest that Appellants, aside from acquiring a lien, retained any interest in the gas delivered to SNGC and SGC. Indeed, the Lien Act provides that “[n]either the provisions of this act nor the filing of any instrument permitted under it shall affect the time at which legal title to the oil and gas may pass from an interest owner or operator to a first purchaser....” Okla.Stat. tit. 52, § 548.5. (footnote omitted).
Similarly, Reserve Oil does not establish that SNGC and SCG did not have rights in the gas acquired from Appellants to which Norwest’s security interest could attach. In Reserve Oil, this court, construing the specific operating agreements at issue in that case, held that the operator of oil wells served in a fiduciary capacity, as a trustee, to the working interest owners who retained full control over their proportionate share of the oil and gas produced. In this case, the gas purchase contracts entered into between Appellants and SNGC and SGC bear no resemblance to the operating agreements discussed in Reserve Oil. Unlike the interest owners in Reserve Oil, Appellants here retained no ownership interest in or control over the gas delivered to SNGC and SGC. Specifically, the gas purchase agreements did not provide that legal title would pass only upon payment. Instead, the agreements provided that *660 SNGC and SGC took legal title to Appellants’ gas upon delivery. Where, as here, a debtor gains possession of collateral pursuant to an agreement endowing him with any interest other than naked possession, the debtor has acquired such rights as would allow a security interest to attach. See Morton Booth Co. v. Tiara Furniture, Inc., 564 P.2d 210, 214 (Okla.1977). Therefore, SNGC and SGC had rights in the gas delivered by Appellants sufficient to effectuate attachment of Norwest’s security interest.
As final arguments, Appellants contend that (1) section 548.4.C of the Lien Act lists specific types of liens that are not affected by the priority rule stated therein, and the exclusion of Oklahoma UCC security interests from that list indicates that the Oklahoma Legislature did not intend that they take priority over liens authorized by the Lien Act[3] and, (2) section 548.6.C of the Lien Act was drafted either to inform interest owners that the Lien Act was not their exclusive remedy, or to clarify that the holders of security interests under the Oklahoma UCC maintain their rights only against the debtor and those who do not have liens authorized by the Lien Act. Appellants’ first contention ignores the structure and language of the Lien Act. As discussed above, section 548.6.C is the final section of the Lien Act. As such, section 548.6.C is the last expression of the Oklahoma Legislature’s will regarding the priority of security interests under the Oklahoma UCC, and that section controls over any inference that arises from the exclusion of security interests under the Oklahoma UCC from section 548.4.C’s list of liens and/or security interests that do have priority over liens authorized under the Lien Act.
As for Appellants’ second argument, section 548.6.C states unambiguously that the Lien Act shall not impair or affect the rights or remedies of “any person” under the Oklahoma UCC. Because section 548.-6.C expressly applies to “any person” and not just interest owners of oil and gas wells, interpretation of it as merely advising interest owners that the Lien Act is not their exclusive remedy is not warranted. Similarly, nothing in the language of section 548.6.C suggests that the broad protection set forth therein for rights under the Oklahoma UCC does not apply in conflicts that involve liens authorized under the Lien Act. Instead, the phrase “nothing in this act” at the beginning of section 548.6.C clearly explains that liens authorized under the Lien Act shall not undermine rights under the Oklahoma UCC.
Accordingly, we conclude that the bankruptcy court properly determined that Nor-west’s security interests under the Oklahoma UCC were not subordinated to Appellants' liens authorized under the Lien Act. Therefore, we AFFIRM the district court’s affirmance of the bankruptcy court’s judgment.

. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

. Okla.Stat.Ann. tit. 12A, § 9-203 provides in pertinent part that "a security interest is not enforceable against ... third parties with respect to the collateral and does not attach unless ... the debtor has rights in the collateral.”

. Under section 548.4.C:
[t]he security interest and lien created pursuant to this act ... shall not have priority over the security interest and/or lien rights previously created and perfected pursuant to Section 144 of Title 42 of the Oklahoma Statutes, subsection (e) of Section 87.1 of Title 52 of the Oklahoma Statutes, or an operating agreement or other voluntary agreement for the development and operation of the property.
Okla.Stat.Ann. tit. 52, § 548.4.C.