BAKER & SONS EQUIPMENT COMPANY, Appellant,

v.

GSO EQUIPMENT LEASING, INC., d.b.a. Hardwood
Mulch Marketers, et al., Appellees.

[Cite as *Baker & Sons Equip. Co. v. GSO Equip.
Leasing, Inc.* (1993), 87 Ohio App.3d 644.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–1380.

Decided May 11, 1993.

*Robert E. Giffin Co., L.P.A.,* and *Robert E. Giffin,* for appellant.

*Enz, Jones & Legrand* and *Sheila Sinno,* for appellees.

PEGGY BRYANT, Presiding Judge.

Plaintiff-appellant, Baker & Sons Equipment Co. ("Baker"), appeals from a judgment of the Franklin County Court of Common Pleas finding for defendants-appellees, GSO Equipment Leasing, Inc. ("GSO Equipment"), Robert Robinson, and Robert Coury on plaintiff's claims of bulk sales violation and fraudulent transfer.

Robert Robinson and Robert Coury were the sole shareholders, officers and directors of a mulch retailing business called GSO, Inc. ("GSO").[1] Foreseeing increased profits from an expanded operation that included mulch manufacturing, they established GSO Equipment as a separate corporation dedicated to mulch production. GSO Equipment obtained a fixed asset loan from BancOhio to purchase the machinery and other assets necessary for mulch manufacturing and gave BancOhio a security interest in the machinery. To provide operating funds, GSO Equipment also obtained a floating line of credit from BancOhio, secured by an interest in all of GSO Equipment's inventory and receivables. GSO, Robinson and Coury were each guarantors on both BancOhio loans. Baker supplied parts for GSO Equipment's machinery as an unsecured creditor.

---

1. Robinson and Coury sold their interests in GSO, Inc. in March 1992.

Lacking expertise in mulch manufacturing themselves, Robinson and Coury hired James Weber, an individual with whom they had previous business dealings, to run GSO Equipment on a day-to-day basis as an employee manager. Weber was the president of Ohio Mulch, Inc., an entity also involved in the local mulch business. Weber and Robinson had previously collaborated as equal shareholders in a business venture called Hardwood Mulch Marketers, Inc., which ceased operations in 1989. Hoping to capitalize on a good trade name and desiring to avoid confusion between GSO and GSO Equipment, GSO Equipment operated under the trade name Hardwood Mulch Marketers. Weber ran the business from the same location at which he had operated Ohio Mulch, Inc.

GSO Equipment manufactured hardwood mulch from raw tree bark and sold it wholesale to mulch retailers. GSO Equipment's two primary customers were GSO and Ohio Mulch, Inc. GSO Equipment charged both customers the same wholesale price outlined in an agreement between GSO Equipment and Ohio Mulch, Inc. GSO then resold the mulch at a higher retail price.

GSO Equipment did business throughout 1989 and much of 1990. In September 1990, Robinson and Coury recognized that GSO Equipment was unprofitable and decided to terminate business operations. GSO Equipment ceased doing business around November 1, 1990.

At the time it ceased doing business, GSO Equipment owned fixed assets consisting of mulch manufacturing equipment, as well as inventory in the form of unsold bulk mulch. Evidence presented at trial indicated that the mulch manufacturing equipment and the bulk mulch had book values of approximately $179,000 and $88,000 respectively. Coury testified, however, that the fair market value of these assets at the time of transfer was considerably less than their book values. Based on the sale price ultimately obtained, Coury estimated that the bulk mulch was worth $5,000 to $7,000 at the time of transfer; based on offers received, he estimated that the mulch machinery was worth approximately $110,000. GSO Equipment at the time had balances with BancOhio of approximately $175,000 on its secured line of credit and $175,000 on its fixed asset loan.

Prior to GSO Equipment's ceasing operations, GSO paid $100,000 directly to BancOhio in order to pay down GSO Equipment's existing line of credit. GSO then purchased GSO Equipment's machinery and remaining bulk mulch inventory and assumed GSO Equipment's liability as the primary obligor on the BancOhio fixed asset and secured line of credit loans.

GSO Equipment had unsecured debts totalling $53,769 at the time it ceased operations. In December 1990, after it had completed the transfer of assets to GSO, GSO Equipment sent notices to all its unsecured creditors informing them that it had ceased business and would be unable to pay off its unsecured debts. Baker received one of these notices and filed suit, alleging that GSO Equipment's

transfer of assets to GSO constituted a fraudulent transfer and was an ineffective bulk transfer. Following trial, the trial court rendered judgment in favor of defendants on both claims, finding the transfer exempt from the Bulk Transfers Act, R.C. Chapter 1306 *et seq.*, and the Fraudulent Transfer Act, R.C. Chapter 1336 *et seq.* Plaintiff appeals, assigning the following errors:

"I. The trial court erred in finding that the appellees' actions were exempted from the Ohio Bulk Transfer Act, R.C. Section 1306 et seq., in finding that the transfer was in settlement or realization of a lien or other security interest.

"II. The trial court erred in ruling that the transfer in question was exempted from the Ohio Uniform Fraudulent Transfer Act, R.C. Chapter 1336 et seq. by finding that 'fair consideration' was paid for the assets and that the assets were encumbered at the time of the transfer."

In its first assignment of error, plaintiff contends that the transfer of assets involved in the present case violated the Bulk Transfers Act, R.C. Chapter 1306, and that the trial court erred in finding that the transfer was exempt from the requirements of the Act as a settlement or realization of a lien or other security interest.

R.C. 1306.01(A) (Uniform Commercial Code ["UCC"] Section 6–102[1] ) defines a "bulk transfer" as:

" * * * any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise, or other inventory * * * of an enterprise subject to sections 1306.01 to 1306.09 * * *."

R.C. 1306.01(C) (UCC 6–102[3] ) explains that enterprises subject to the Bulk Transfers Act include "[t]he enterprises * * * whose principal business is the sale of merchandise from stock, including those who manufacture what they sell * * *." The trial court found that, although the transfer involved in the present case fit within this definition, the transfer was nonetheless exempt from the Act's coverage and its notice requirements as a "transfer in settlement or realization of a lien or other security interest" pursuant to R.C. 1306.02(C) (UCC 6–103[3] ).

The statute itself does not define what constitutes a "transfer in settlement or realization of a lien or other security interest," leaving the decision of whether a particular transfer falls within the statutory exemption to interpretation. "Transfers in settlement" generally refers to a secured party's election to accept collateral in discharge of a secured obligation under R.C. 1309.48 (UCC 9–505). *Techsonic Indus., Inc. v. Barney's Bassin' Shop, Inc.* (Mo.App.1981), 621 S.W.2d 332, 334 (Maus, C.J., dissenting); White & Summers, Uniform Commercial Code (3 Ed.1988) 898, Section 20–2. "Transfers in realization" generally refers to a transfer by a secured party in foreclosure of a security interest under R.C.

1309.47 (UCC 9–504). *Techsonic, supra,* at 334; White & Summers, *supra,* at 898.

■ The acceptance of collateral in discharge of a secured obligation under R.C. 1309.48 (UCC 9–505) or the transfer of assets via foreclosure proceedings under R.C. 1309.47 (UCC 9–504) contemplates that the debtor be in default and that the secured creditor have a present right to foreclose. Other courts considering the issue have uniformly required evidence of the debtor's default and of the creditor's right to foreclose as a prerequisite to finding a transfer exempt from the requirements of the Bulk Transfers Act under UCC 6–103(3). See *Hixson v. Pride of Texas Distrib. Co., Inc.* (Tex.App.1985), 683 S.W.2d 173, 178; *Stone's Pharmacy, Inc. v. Pharmacy Accounting Mgmt., Inc.* (C.A.8, 1987), 812 F.2d 1063, 1066; *United States Shoe Corp. v. Cudmore–Neiber Shoe Co.* (D.S.D.W.D.1976), 419 F.Supp. 135, 138–139; *Starman v. John Wolfe, Inc.* (Mo.App.1973), 490 S.W.2d 377, 382; White & Summers, *supra,* at 898. Thus, a generally accepted interpretation of R.C. 1306.02(C) requires evidence of default as a prerequisite to finding a transfer exempt; conversely, in the absence of such evidence, neither a settlement nor a realization of a security interest exists under that section. Accord White & Summers, *supra,* at 899.

■ In the present case, no evidence suggests that GSO Equipment ever defaulted on any of its secured obligations. Indeed, defendants acknowledge that GSO Equipment timely made all payments on its line of credit and fixed asset loan, and even paid down both loans prior to transfer. Hence, the transfer involved in the present case was not exempt from the Bulk Transfers Act as a settlement or realization of a security interest because the loans involved were never in default and BancOhio did not possess a present right to foreclose.

Whether the assets must be transferred directly to the secured party to satisfy the exemption for "transfers in settlement or realization of a lien or other security interest" need not be resolved herein. As defendants note, the exemption has been applied in some cases where the entire value of the transfer was applied to the secured debt, even though the assets themselves were transferred to third parties. See *Am. Metal Finishers, Inc. v. Palleschi* (1977), 55 A.D.2d 499, 391 N.Y.S.2d 170; *River City Products, Inc. v. AEJ, Inc.* (Ky.App.1989), 774 S.W.2d 452; *Ouachita Elec. Coop. Corp. v. Evans–St. Clair* (Ark.App.1984), 672 S.W.2d 660. However, in each of those cases, either a default or the practical equivalent thereof had occurred. Since the present record lacks evidence of a default, the exemption does not apply, even if defendants are correct in asserting that transfers to third parties fall within the parameters of the exemption.

Given the foregoing, the trial court erred in finding that the present transfer was exempt from the requirements of the Bulk Transfers Act as a transfer in

settlement or realization of a lien or other security interest under R.C. 1306.02(C) (UCC 6–103[3] ). We recognize that, given the evidence herein, plaintiff was not injured by defendants' failure to comply with the Bulk Transfers Act, as the evidence suggests that the assets transferred were valued at less than the amount yet to be paid to the lienholder. Nonetheless, the Bulk Transfers Act appears to require a mechanical application of its terms, unassisted by a hindsight view of whether anyone was injured by the failure to comply therewith. Indeed, apparently for that reason, some commentators have called for a repeal of Article 6. See, *e.g.*, Rapson, U.C.C. Article 6: Should It Be Revised or "Deep–Sixed"? (1983), 38 Bus.Law 1753; see, also, Prefatory Note to Revised Article 6 of the Uniform Commercial Code, 2C U.L.A. 7 (1991) (recommendation of the National Conference of Commissioners on Uniform State Laws and the American Law Institute that those states which have adopted Article 6 repeal it). In Ohio, however, it remains the law.

Having found that GSO Equipment was required to comply with the strictures of the Bulk Transfers Act, we next consider whether GSO Equipment's notice to creditors complied with the requirements of the Bulk Transfers Act.

R.C. 1306.04 (UCC 6–105) requires the transferee to provide notice of a proposed bulk transfer to existing creditors of the transferor. R.C. 1306.05 (UCC 6–107) outlines the contents of the notice to be provided to the creditors in the present case. The notice must state: (1) that a bulk transfer is about to take place, (2) the names and addresses of the transferor and the transferee, (3) whether the debts of the transferor will be paid in full, (4) the location of and a general description of the property to be transferred as well as a total of all the transferor's debts, (5) the address where the schedule of property and list of creditors can be inspected, (6) whether the transfer is being made to satisfy existing debts, and (7) whether the transfer is for new consideration.

■ The notice provided by GSO Equipment herein was sent out after the transfer had already taken place and simply informed the unsecured creditors that they would not be paid and that the property would be "liquidated" to pay the secured debts of BancOhio.[2] GSO Equipment's notice thus did not comply

---

2. GSO Equipment's notice read as follows:
 "Dear Sirs:
 "It is with deep regret that we must advise you that GSO Equipment Leasing, Inc. dba Hardwood Mulch Marketers is permanently ceasing operations effectively immediately. Unforeseen production problems beyond our control have made it impossible to continue ongoing business.
 "Remaining inventory and equipment will be liquidated and the proceeds applied to the BancOhio National Bank debt, the sole secured creditor. GSO Equipment Leasing has attempted to reduce the BancOhio obligation but its balance still far exceeds the value of any assets of GSO Equipment Leasing.

with the requirements of the Bulk Transfers Act. Nonetheless, GSO Equipment argues that it complied with the "spirit" of the Bulk Transfers Act by providing subsequent notice of the sale and by letting unsecured creditors know that they were not going to be paid. GSO Equipment's argument, however, fundamentally misconstrues the purpose of the Bulk Transfers Act. The ten-day pre-sale notice requirement is the heart of the Bulk Transfers Act, and compliance is required in all cases. See Official Comments 1 and 2 to R.C. 1306.04. Notice prior to sale and adherence to the specific notice content requirements of the Bulk Transfers Act are essential if unsecured creditors are to police the sale of assets and to protect their interests effectively. *Mid–Am. Industries, Inc. v. Ketchie* (Okla. 1989), 767 P.2d 416, 418.

Accordingly, Baker's first assignment of error is sustained.

In its second assignment of error, Baker contends that the trial court erred in finding that GSO Equipment's transfer of assets was exempted from Ohio's Uniform Fraudulent Transfer Act, R.C. Chapter 1336, because GSO paid "fair consideration" for the assets.

■ A transfer is fraudulent as to present or future creditors if the debtor made the transfer "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor * * *." R.C. 1336.04(A)(1). In determining actual intent, R.C. 1336.04(B) lists several statutory factors, or the so-called "badges of fraud," that a court considers to determine if an inference of fraud exists.[3] If the party alleging fraud is able to demonstrate a sufficient number of badges, the burden of proof then shifts to defendant to prove that the transfer was not fraudulent. *Cardiovascular & Thoracic Surgery of Canton, Inc. v. DiMazzio* (1987), 37 Ohio App.3d 162, 166, 524 N.E.2d 915, 918. Under R.C. 1336.08(A), a party which

"Regretfully, no cash remains to pay the unsecured creditors.
"Very truly yours,
"Hardwood Mulch Marketers"

**3.** R.C. 1336.04(B) lists the following "badges of fraud" relevant to the present case:
"(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:
"(1) Whether the transfer or obligation was to an insider;
"(2) Whether the debtor retained possession or control of the property transferred after the transfer;
"(3) Whether the transfer or obligation was disclosed or concealed;
" * * *
"(5) Whether the transfer was of substantially all of the assets of the debtor;
"(6) Whether the debtor absconded;
"(7) Whether the debtor removed or concealed assets;
"(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
"(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation incurred * * *."

demonstrates that it participated in the transfer in good faith and paid reasonably equivalent value rebuts the presumption of fraud created by badges of fraud.

 The trial court found that Baker had proven a sufficient number of badges of fraud to infer fraudulent intent upon GSO Equipment, but found that the transfer was nonetheless "exempt" from the Fraudulent Transfer Act because GSO had paid reasonably equivalent value for the assets.[4] In reaching its decision, the court noted that GSO Equipment presented unrebutted evidence indicating the amount paid for the assets exceeded fair market value. Baker concedes it failed to present any valuation evidence at trial but contends that GSO Equipment's failure to provide advance notice of the transfer in violation of the Bulk Transfers Act deprived it of the opportunity to appraise the assets at the time of transfer, and further contends that it cannot now accurately value the property at the time of sale because the property has declined in value.

Whether such an argument may have merit under the Bulk Transfers Act, it is unpersuasive in the context of the Fraudulent Transfer Act. Even if Baker was unable to value the property at the time of transfer, upon learning of the transfer it presumably could have sought the assistance of an expert knowledgeable in the prices of mulch machinery to assist in demonstrating what roughly similar machinery would have cost at the time of transfer, or alternatively, indicating why such a valuation is impossible. To accept allegations of inadequate consideration, such as Baker's, where the party provides no factual support for such allegations, would only encourage inadequate preparation on complex valuation issues.

The ultimate burden of proof in fraud cases rests with the party asserting fraud. *McKinley Fed. S. & L. v. Pizzuro Enterprises, Inc.* (1990), 65 Ohio App.3d 791, 585 N.E.2d 496. When GSO Equipment presented evidence indicating it paid reasonably equivalent value for the assets transferred, it rebutted the inference of fraud and shifted the ultimate burden of proof back to Baker. R.C. 1336.08(A). In the absence of evidence more clearly demonstrating why a reasonable approximation of the value of the assets at the time of transfer was impossible in this case, we cannot relieve Baker of its ultimate evidentiary burden to prove fraud.

 Perhaps more seminal, however, to a resolution of Baker's arguments under the Fraudulent Transfer Act is the trial court's finding that the assets involved were exempted from the Ohio Uniform Fraudulent Transfer Act under

---

4. Although the trial court stated that the transfer was "exempt" from the Fraudulent Transfer Act, it is more accurate to say that the giving of reasonably equivalent value in the transaction is a "defense" to prima facie case of actual intent to defraud under R.C. 1336.04(A)(1). See Comment 1 to Uniform Fraudulent Transfer Act Section 8, 7A U.L.A. 663 (1985).

R.C. 1336.01(B) as encumbered assets; Baker asserts the finding is in error. R.C. 1336.01(B) broadly defines "assets" to include all "property of a debtor," but then excludes from the definition "[p]roperty to the extent it is encumbered by a valid lien." R.C. 1336.01(B)(1). A " '[v]alid lien' means a lien that is effective against the holder of a judicial lien subsequently obtained by legal or equitable process or proceedings." R.C. 1336.01(M). A security interest created by agreement is a "lien" under R.C. 1336.01(H) and is effective, if properly perfected, against a subsequent valid judicial lien under R.C. 1309.20 (UCC 9–301).

The record herein indicates that BancOhio secured its fixed asset and operating line of credit loans with perfected security interests on all GSO Equipment's assets, and that the fair market value of these assets was less than the amount of debt GSO Equipment owed to BancOhio, so that the assets were fully encumbered at the time of transfer.

Further, R.C. 1336.04 defines the prohibited transactions under the Fraudulent Transfer Act as a "transfer" made under specified conditions. R.C. 1336.01(L) defines a "transfer" as a "disposing of or parting with an asset or an interest in an asset * * *." Under all of the foregoing, since the equipment and inventory at issue were encumbered by valid liens, they are not assets; not being assets, they do not fall within the definition of transfers governed by the Fraudulent Transfers Act and, to that extent, are "exempt" from the provisions thereof. Accordingly, the trial court did not err in so determining.

Baker's remaining assertions under its second assignment of error being disposed of by virtue of the foregoing, Baker's second assignment of error is overruled.

Having sustained Baker's first assignment of error, we reverse the trial court's finding that the transfer was exempt from the requirements of the Bulk Transfers Act and remand the cause for further proceedings. Having overruled Baker's second assigned error, we affirm the trial court's finding that the transfer did not violate Ohio's Fraudulent Transfer Act.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

PETREE and DESHLER, JJ., concur.