**DUNBAR et al.**

v.

**WIENER et al.**

Court of Common Pleas of Ohio,
Lucas County.

No. CI96–1998.

Decided Sept. 22, 1998.

2

4

*Barry E. Savage,* for plaintiffs.

*Wittenberg & Phillips* and *Jerome Phillips,* for Martin Z. Wiener and Sycamore Realty Company.

*Nathan & Roberts* and *H. Buswell Roberts,* for Stephan H. Wiener.

CHARLES J. DONEGHY, Judge.

This declaratory judgment case is before the court on a summary judgment motion filed by defendants Martin Z. Wiener and the Sycamore Realty Company ("Sycamore") and a motion for partial summary judgment filed by the plaintiffs. Upon review of the pleadings, memoranda of the parties, evidence, and applicable law, the court finds that Wiener and Sycamore's motion should be granted and that the plaintiffs' motion should be denied.

## I FACTS

The plaintiffs in this action are unsecured creditors of defendant Stephan H. Wiener ("Stephan"). Stephan and his father, Martin Z. Wiener ("Wiener"), were the sole shareholders in Sycamore. Sycamore was a duly registered Ohio corporation. In 1989, Stephan borrowed $700,000 from Huntington Bank. Sycamore agreed to guarantee that loan ("the Huntington loan"). Stephan and Sycamore entered into a "pledge agreement" by which Stephan assigned his forty-one Sycamore shares to Sycamore as collateral for the Huntington loan. Sycamore never took possession of Stephan's forty-one shares. Within a year, Stephan was unable to fulfill his obligation to repay the Huntington loan. Sycamore took over payments on that loan and became the primary obligor. After Sycamore repaid the Huntington loan, Stephan owed Sycamore $829,003 as a result of the Huntington loan, some prior loans to Stephan from Sycamore, and interest. On June 29, 1993, Sycamore executed on Stephan's forty-one shares of stock designated as collateral. On Sycamore's corporate record, Sycamore formally transferred record ownership of the forty-one shares from Stephan to Sycamore. Sycamore never took possession of the two certificates representing Stephan's shares. Stephan, Wiener, and Sycamore acknowledged this transfer. At the time Sycamore redeemed Stephan's shares, the shares were valued at $248,805. Thus, after the redemption, Stephan owed Sycamore $580,198 ($829,003 − $248,805 = $580,198).

On October 31, 1993, Sycamore's corporate secretary signed a certificate of resolution indicating that the corporation's sole director, Wiener, had adopted a resolution to dissolve Sycamore. On November 12, 1993, Sycamore filed with Ohio's Secretary of State a "Certificate of Dissolution By Directors of * * * The Sycamore Realty Company," indicating that Sycamore's board of directors had elected to wind up Sycamore's affairs and dissolve pursuant to R.C. 1701.86(D)(1).[1] Upon dissolution, Wiener, the sole remaining shareholder in Sycamore, absorbed the balance of Stephan's debt to Sycamore.

Unbeknownst to Wiener at anytime relevant to this action, i.e., from the time Stephan assigned his shares as collateral through the time Sycamore dissolved, Stephan had other financial debts. The parties do not dispute that Stephan owed money to plaintiffs. Plaintiffs obtained a writ of execution against Stephan by which the Lucas County Sheriff levied upon the contents of a safety deposit box held in Stephan's name. The sheriff's deputy who executed the writ found the two stock certificates issued by Sycamore to Stephan, representing the forty-one shares that Sycamore's books indicated that it had "redeemed" from Stephan.

Plaintiffs subsequently filed this action seeking the following declarations: (1) that Sycamore never properly redeemed Stephan's forty-one shares because he failed to deliver the certificates representing the shares, and/or (2) that Sycamore redeemed Stephan's stock for inadequate consideration in fraud of creditors, and/or (3) a determination of the value of the alleged unlawfully redeemed stock at the time of the attempted redemption. Plaintiffs also seek a judgment against Wiener and Sycamore for the amount of the inadequate consideration related to Stephan's redeemed shares or for the amounts due Stephan as an unreimbursed shareholder from the dissolution proceeds. Plaintiffs additionally seek the appointment of a receiver to trace Sycamore's former assets attributable to the improper redemption and/or improper dissolution.

Wiener and Sycamore have moved for summary judgment, and plaintiffs have moved for partial summary judgment.

## II  STANDARD FOR MOTION FOR SUMMARY JUDGMENT

In *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, the Supreme Court of Ohio set forth the requirements for granting a Civ.R. 56 motion for summary judgment:

---

1.  R.C. 1701.86(D)(1) provides as follows:
    "(D) The directors may adopt a resolution of dissolution in the following cases:
    (1) When the corporation has been adjudged bankrupt or has made a general assignment for the benefit of creditors."

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." See, also, *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201, 203–204. "The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Id.* at 370, 696 N.E.2d at 204, citing *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273–274.

## III  DISCUSSION

The moving defendants raise the following three arguments in support of their motion for summary judgment: (1) plaintiffs are and were neither holders of shares of Sycamore nor holders of a security interest in Sycamore, (2) Sycamore validly redeemed Stephan's shares, and (3) Sycamore redeemed Stephan's shares for fair consideration and, therefore, there was no fraud of creditors.[2] In their motion, plaintiffs assert that Sycamore never validly redeemed Stephan's shares because the certificates were in his possession (in his safety deposit box) at the time. Plaintiffs assert that the fraud-of-creditors claim should be determined later. The court will address the moving defendants' arguments before those of the plaintiffs. The court will review the defendants' arguments in reverse order.

First, the moving defendants assert that they are entitled to summary judgment in this action because plaintiffs are neither holders of shares nor holders of a security interest in Sycamore. These defendants assert that there is no genuine issue of material fact on this issue. The court notes that there is no dispute that the plaintiffs have no direct interest in Sycamore. R.C. Chapter 2721, the Declaratory Judgment Act, establishes certain requirements that a petitioner must satisfy before he or she may obtain a declaratory judgment. *Buckeye Quality Care Centers, Inc. v. Fletcher* (1988), 48 Ohio App.3d 150, 154, 548 N.E.2d 973, 976–977. There must be "(1) a real controversy between the parties; (2) the controversy is justiciable in character; and (3) speedy relief is

---

2.  The moving defendants raised the first two arguments in their reply brief in support of their motion. Plaintiffs thereafter filed a response to the moving defendants' reply. The court finds that these first two arguments are procedurally proper and, thus, may be considered by the court because plaintiffs had a meaningful opportunity to respond to the arguments in their subsequent "response" brief. See *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114–115, 526 N.E.2d 798, 800–802.

necessary to preserve the rights of the parties." *Ohio Assn. of Life Underwriters, Inc. v. Duryee* (1994), 95 Ohio App.3d 532, 534, 642 N.E.2d 1145, 1146. R.C. 2721.03 provides as follows:

"Any person interested under a deed, will, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a constitutional provision, statute, [or] rule * * * *may have determined any question of construction or validity arising under such instrument* * * * *and obtain a declaration of rights, status, or other legal relations thereunder.*" (Emphasis added.)

Whether a trial court entertains a declaratory judgment action is within the sound discretion of that court. *Solon Chamber of Commerce v. Women's Gen. Hosp.* (1992), 81 Ohio App.3d 687, 691, 612 N.E.2d 331, 333–334. A petitioner fails to establish a justiciable controversy when he or she merely asserts that another party has failed to comply with administrative procedures. *Duryee*, 95 Ohio App.3d at 534–535, 642 N.E.2d at 1146–1147. Unless the petitioner challenges the validity of the governing statute or administrative regulation rather than a specific other party's treatment under such rules, the petitioner lacks standing to challenge the specific case by a declaratory judgment action. *Id.* at 535, 642 N.E.2d at 1146–1147.

At issue in this case is whether the plaintiffs have any type of interest in the stock certificates and the shares that the certificates represented sufficient to create a "real controversy between the parties." In *Wasserman v. W. India Coffee Co.* (C.P.1951), 62 Ohio Law Abs. 190, 97 N.E.2d 429, 430–431, the court was called upon to declare the ownership of certain shares of stock issued by a corporation; ownership of the shares was contested by individuals who had competing claims to the shares. The *Wasserman* court concluded that the issuing corporation was not a proper party to the declaratory judgment action because there was no controversy between the corporation and the contestants. In the instant case, plaintiffs' connection to Sycamore and its stock is even more attenuated than the connection in *Wasserman.* Here, there is no dispute that plaintiffs have no claim to ownership interest in Sycamore and no security interest in the company or its stock. The plaintiffs also have no contractual relationship with Sycamore. The Sycamore stock certificates now held by the clerk of this court fail to provide plaintiffs with an interest that may be protected by an action based on R.C. Chapter 2721. See *Knight v. Shutz* (1943), 141 Ohio St. 267, 25 O.O. 396, 47 N.E.2d 886, paragraph nine of the syllabus ("A stock certificate issued by a corporation is a contract between the corporation and the holders of certificates of stock * * *.").

8

Thus, the court finds that plaintiffs have no controversy with the moving defendants that is justiciable under the declaratory judgment statute. Accordingly, the court finds that the moving defendants are entitled to judgment on the declaratory judgment claims in this case as a matter of law. Nevertheless, the court will address the merits of the parties' arguments.

The next issue is whether Sycamore validly redeemed Stephan's shares in the company. Defendants assert that, at the time of the "redemption," Stephan's two certificates were lost. Defendants argue that both the redemption and, by logical extension, the dissolution were valid because ownership of the shares was transferred on Sycamore's books to Sycamore and, thus, Sycamore became the owner of Stephan's shares after the redemption.[3]

On the other hand, plaintiffs argue that Stephan's shares were "certificated securities."[4] Plaintiffs assert that shares represented by such certificates may be purchased or redeemed only by physical transfer.[5] See *Knight*, 141 Ohio St. 267, 25 O.O. 396, 47 N.E.2d 886, paragraph four of the syllabus ("The title to a stock certificate and the shares represented thereby can be transferred only by delivery of the certificate * * *."). They claim that, because Stephan never relinquished possession of the certificates (because they remained in his safety deposit box), Sycamore never validly redeemed his shares. Plaintiffs note that the certificates state that the shares are "transferable only on the books of the Corporation by the holder hereof in person/or by attorney/upon the surrender of this Certificate properly endorsed." Thus, plaintiffs further contend that, because Stephan continued to be a shareholder, the defendants never validly dissolved the corporation, and Stephan was entitled to a portion of the profits

---

**3.** R.C. 1701.01(F) reads as follows:

" 'Shareholder' means a person whose name appears on the books of the corporation as the owner of shares of such corporation."

**4.** Former R.C. 1308.01(A)(1) defined "certificated security" as follows:

"(1) A 'certificated security' is a share, participation, or other interest in property of or an enterprise of the issuer or an obligation of the issuer which is:

"(a) Represented by an instrument issued in bearer or registered form;

"(b) Of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and

"(c) Either one of a class or series or by its terms divisible into a class or series of shares, participations, interests, or obligations." 143 Ohio Laws, Part III, 3412, 3580.

**5.** Former R.C. 1308.28(A)(1) stated that a transfer of a certificated security occurs only "[a]t the time [a *purchaser*] or a person designated by him acquires possession of a certificated security." (Emphasis added.) 142 Ohio Laws, Part III, 4853, 4920.

"Redemption" of a security is merely a *repurchase* by the issuing corporation. *Browder v. Mutual Tool & Die, Inc.* (1970), 25 Ohio Misc. 206, 210, 54 O.O.2d 241, 243, 263 N.E.2d 785, 787. Thus, the transfer to a redeeming corporation of a certificated security ordinarily occurs at the time the corporation regains possession of the certificate.

realized by Sycamore upon dissolution. For the purposes of this motion, the court shall treat the certificates as certificated securities.

As already noted, transfer to a purchaser of a certificated security ordinarily occurs when the purchaser gains possession of the certificate. Former R.C. 1308.28(A)(1). However, the purpose of this type of transfer rule is to protect the rights of a good-faith purchaser. See *Knight*, 141 Ohio St. at 276, 25 O.O. at 400, 47 N.E.2d at 890–891. In Ohio, corporations are required to maintain "*records of [their] shareholders* showing their names and addresses and the number and class of shares issued or transferred of record to or by them from time to time." (Emphasis added.) R.C. 1701.37(A). These records of ownership serve as prima facie evidence of ownership. R.C. 1701.37(B); *Wick v. Youngstown Sheet & Tube Co.* (1932), 46 Ohio App. 253, 261, 12 Ohio Law Abs. 353, 356, 188 N.E. 514, 517–518. See Henn & Alexander, Laws of Corporations (3 Ed.1983) 447 ("record ownership is accepted as conclusive and binding on the courts"). And, as mentioned above, a "shareholder" is a person "whose name appears on the books of the corporation as the owner of shares." R.C. 1701.01(F). In Ohio, as in other states, these statutes allow corporations to rely on such record ownership for all manner of issues involving participation in the company. R.C. 1701.28(B)(2)[6]; Henn & Alexander, *supra*, at 448.

The *Knight* case, which held that title to shares can be transferred only by delivery of the certificate, is properly distinguishable from this case. That case involved a dispute between various parties all of whom had proper claims to ownership of the shares represented by the certificates in that case. However, in this case, unlike in *Knight*, the plaintiffs have no such valid claim to ownership in their own right; they are not good-faith purchasers. See *Knight*, 141 Ohio St. at 276, 25 O.O. at 400, 47 N.E.2d at 890–891. The parties in this case that have had interests in the shares and certificates representing the shares, *i.e.*, the defendants, do not dispute that Stephan transferred his interest to Sycamore and that Sycamore redeemed that interest. The evidence in this case unequivocally indicates that Sycamore redeemed Stephan's interest. Therefore, the court finds that the record ownership signified by Sycamore's corporate records should be relied on as to ownership and that Stephan validly transferred his shares in Sycamore as asserted by the moving defendants.

---

**6.** R.C. 1701.28(B)(2) provides:

"(B) A corporation shall incur no liability if:
"* * *
"(2) It treats any person in whose name shares or other securities stand of record on its books as the absolute owner thereof * * *."
R.C. 1701.28(E) applies the same immunity "to all agents of the corporation concerned with the exercise of any rights by any of its shareholders."

Thus, the court finds that the defendants are entitled to summary judgment on the issues the validity of the redemption of Stephan's shares and the validity of the dissolution of Sycamore.[7] The court also finds that plaintiffs' motion for partial summary judgment should be denied.

Defendants also seek judgment on the plaintiffs' claims regarding fraudulent transfer. Plaintiffs request a declaration that the redemption of Stephan's shares in Sycamore was for inadequate consideration and, thus, was a fraudulent transfer. They also seek to recover from defendants the amount that the plaintiffs claim should have been paid to Stephan.

R.C. 1336.04(A) defines when a transfer as fraudulent:

"(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:

"(1) With *actual intent* to hinder, delay, or defraud any creditor of the debtor;

"(2) *Without receiving a reasonably equivalent value* in exchange for the transfer or obligation, and if either of the following applies:

"(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

"(b) The debtor intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." (Emphasis added.)

The burden is on the person challenging a transaction to prove it was fraudulent. *Stein v. Brown* (1985), 18 Ohio St.3d 305, 308, 18 OBR 352, 355, 480 N.E.2d 1121, 1123–1124. In order to aid in proving "actual intent," the General Assembly established so-called "badges of fraud" in R.C. 1336.04(B) that create an inference of fraud.[8] *Baker & Sons Equip. Co. v. GSO Equip. Leasing, Inc.*

---

7. Even if Stephan continued to remain a shareholder after Sycamore redeemed his shares, the court finds that the dissolution was proper. R.C. 1701.86(A) and (D)(1) permit directors of a corporation to voluntarily dissolve the entity for the benefit of creditors. As a holder of Stephan's unsatisfied debt to Sycamore ($580,198), Wiener was a creditor. In addition, R.C. 1701.88(D) and 1701.76(E) permit the directors to wind up the corporation and dispose of the business's assets upon a proper resolution. Such a resolution was issued to dissolve and wind up Sycamore. Thus, as president and director of Sycamore, Wiener had the power to dissolve and wind up that company. See 2 Fletcher, Cyclopedia of the Law of Private Corporations (1990) 668, Section 545 (officers/directors have the power to dissolve the entity when authority is conferred by statute).

8. R.C. 1336.04(B) reads as follows:

(1993), 87 Ohio App.3d 644, 650, 622 N.E.2d 1113, 1117–1118. Proof of sufficient badges shifts the burden to the defendant to prove that the transaction was not fraudulent. *Id.* However, R.C. 1336.08(A) provides that a party who demonstrates that he or she participated in the transaction in good faith and paid reasonably equivalent value rebuts the presumption created by the "badges" of actual intent to defraud. *Id.*, 87 Ohio App.3d at 650–651, 622 N.E.2d at 1117–1119.

In this case, the Wiener and his former attorney, David A. Katz, both stated in their affidavits that Stephan's stock was valued at $248,805 at the time of redemption in June 1993. Plaintiffs attempt to create a genuine issue of material fact regarding valuation by arguing that Sycamore sold its primary asset, a property called Howard Farms, in December 1993 for a contract sale price of $2,259,000. In support, they refer to the closing statement for the Howard Farms sale. They speculate that the value of the Howard Farms property was not included in the valuation of Stephan's shares in June 1993. However, speculation is insufficient to create a genuine issue of material fact to defeat summary judgment. See *Schutt v. Rudolph–Libbe, Inc.* (Mar. 31, 1995), Wood App. No. WD–94–064, unreported, 1995 WL 136777; *Williams v. Sun Co., Inc. (R & M)* (1993), 63 Ohio Misc.2d 429, 433, 631 N.E.2d 195, 197–198. Additionally, the court finds that, while the sales price was over two million dollars, the net amount realized by Sycamore was $1,270,705; the net amount is only slightly over twice the amount of the unsatisfied debt ($580,198) owed by Stephan to Sycamore. Thus, the court finds that no genuine issue remains as to whether Sycamore paid fair value to Stephan for his shares.

---

"(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:

"(1) Whether the transfer or obligation was to an insider;

"(2) Whether the debtor retained possession or control of the property transferred after the transfer;

"(3) Whether the transfer or obligation was disclosed or concealed;

"(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

"(5) Whether the transfer was of substantially all of the assets of the debtor;

"(6) Whether the debtor absconded;

"(7) Whether the debtor removed or concealed assets;

"(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

"(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

"(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred; ·

"(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor."

Additionally, Wiener testified that, at all times relevant to this action, he did not know of Stephan's involvement with (and thus Stephan's debts to) the plaintiffs in this case. This testimony is undisputed. Accordingly, the court finds that the motion of Wiener and Sycamore for summary judgment on the fraudulent transfer issues is well taken.

Based on the foregoing, the court finds that the Wiener and Sycamore are entitled to summary judgment on the entire complaint against them. The court also finds that the plaintiffs' motion for partial summary judgment is not well taken. The claims against defendant Stephan remain to be resolved.

## JUDGMENT ENTRY

It is ordered that the motion for summary judgment filed by defendants Martin Z. Wiener and Sycamore Realty Company is granted. It is further that the plaintiffs' claims against these defendants is dismissed with prejudice.

It is further ordered that the motion for partial summary judgment filed by the plaintiffs is denied.

This case is continued for resolution of the plaintiffs' claims against defendant Stephan H. Wiener.

*Judgment accordingly.*