OPINION
{¶ 1} G. Glenn Ivey and Rose Lee Sharpe appeal from a judgment of the Montgomery County Court of Common Pleas, which found that they had violated the Ohio Uniform Fraudulent Transfer Act set forth in R.C. Chapter 1336, set aside a real property conveyance, and awarded punitive damages to a creditor, Kenneth Gevedon.
 {¶ 2} The events leading to the fraudulent transfer claim are largely undisputed. Ivey is Sharpe's nephew and a real estate entrepreneur of sorts. He had a long history of purchasing real estate with the intention of turning a profit after the property was improved upon or sold for other reasons. He had also operated a business that involved buying and selling cars. Evidence was presented, and Ivey admitted, that on occasion there had been problems with the titles to the real estate and cars that he had sold.
 {¶ 3} In 1998, Ivey became interested in purchasing a piece of property at 2001 Valley Street in Dayton. The property was a trailer park that apparently housed five mobile homes and a house that was used as rental property. Sharpe agreed to lend Ivey $8,000 toward this purchase and she talked with her friend, Jack Schmermund, about loaning Ivey an additional $39,000. Sharpe guaranteed the loan from Schmermund to Ivey.
 {¶ 4} In January 1999, Ivey borrowed more money from Schmermund, bringing the total amount loaned by Schmermund to $78,000. By January 29, 1999, approximately $4,000 had apparently been paid on the loans, leaving an outstanding balance of $74,000. Sharpe assured Schmermund that she would make the payments on the loan as of March 1, 1999, if Ivey was unable to do so. Indeed, on March 1, 1999, Sharpe entered into a written agreement with Schmermund in which she agreed to repay the $74,000, and a mortgage to this effect was recorded on March 3, 1999.
 {¶ 5} Meanwhile, in December 1998, Gevedon filed a complaint against Ivey in the Montgomery County Court of Common Pleas claiming that Ivey had failed to pay him $88,700 that was owing on a loan. Ivey did not respond to the complaint and a default judgment was entered against him on February 25, 1999. Gevedon filed his certificate for judgment against Ivey on February 26, 1999. That same day, Ivey transferred the property at 2001 Valley Street to Sharpe. Sharpe and Ivey claimed that Ivey was no longer able to make the payments on the property and that Sharpe had agreed to assume the payments as of March 1 in exchange for Ivey's interest in the property. Sharpe also forgave the $8,000 debt for money that she had loaned to Ivey. Ivey and Sharpe claimed that they did not know about the default judgment at the time of this transfer, although Ivey did apparently know that an action was pending against him. Ivey filed for bankruptcy a few months later. Because Ivey refused to participate in debtors' examinations, the bankruptcy court eventually ruled that Gevedon's judgment against Ivey could not be discharged in bankruptcy.
 {¶ 6} On June 14, 2000, Gevedon filed a complaint against Ivey and Sharpe claiming that their transfer of property on February 26, 1999, had violated the Ohio Uniform Fraudulent Transfer Act. Gevedon sought compensatory and punitive damages. The matter was heard by a magistrate in April 2001. The magistrate found in favor of Gevedon and set aside the February 26, 1999 transfer of property between Ivey and Sharpe. The magistrate also awarded attorney fees in the amount of $12,935.98. Ivey filed objections to the magistrate's decision, but the trial court overruled the objections and adopted the magistrate's report and recommendation. Thus, the trial court set aside the transfer from Ivey to Sharpe and awarded attorney fees in the amount of $12,935.98.
 {¶ 7} Ivey raises two assignments of error on appeal. We will address these assignments in reverse order to facilitate our discussion.
 {¶ 8} "II. The Trial Court Committed an Abuse of Discretion in Finding a Fraudulent Transfer Occurred Under R.C. § 1336.04."
 {¶ 9} Ivey claims that the trial court erred in several respects in finding that he had made a fraudulent conveyance. He disputes the trial court's finding that the transfer was not made for reasonably equivalent value. He claims that only three "badges of fraud" were established by clear and convincing evidence and that this was not a sufficient number to prove an intent to defraud.
 {¶ 10} R.C. 1336.04(A) provides that a transfer made by a debtor is fraudulent as to a creditor if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor or without receiving a reasonably equivalent value in exchange for the transfer. R.C. 1336.04(B) states that, in determining whether there was an actual intent to defraud, consideration must be given to all relevant factors, including eleven factors that are specifically enumerated therein and are commonly referred to as "badges of fraud." These factors include: 1) whether the transfer was to an insider; 2) whether the debtor retained possession or control of the property transferred after the transfer; 3) whether the debtor had been sued or threatened with suit before the transfer was made; 4) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred; 5) whether the debtor was insolvent or became insolvent shortly after the transfer was made; and 6) whether the transfer occurred shortly before or shortly after a substantial debt was incurred.
 {¶ 11} While proof of one or more of the badges of fraud tends to show the existence of actual intent to defraud, it does not constitute proof of fraud per se. Atlantic Veneer Corp. v. Robbins, Pike App. No. 01CA678, 2002-Ohio-5363; Ford v. Star Bank N.A. (Aug. 27, 1998), Lawrence App. No. 97CA39. Once a creditor demonstrates a sufficient number of these badges of fraud with regard to a transfer, the burden of proof shifts to the debtor to prove that the transfer was not fraudulent. Atlantic VeneerCorp, supra;Ford, supra, citing Baker Sons Equipment Co. v. GSOEquipment Leasing, Inc. (1993), 87 Ohio App.3d 644, 650. To rebut this presumption of fraud, the debtor can demonstrate that he or she made the transfer in good faith for a reasonably equivalent value. R.C. 1336.08(A);Baker, 87 Ohio App.3d at 651.
 {¶ 12} It was undisputed that Sharpe was an insider because she was a relative of Ivey's, that Ivey had been sued at the time of the transfer, and that the transfer occurred around the time that Ivey incurred a substantial debt, the judgment against him. It is also undisputed that Ivey was unable to pay his bills at the time of the transfer and filed for bankruptcy shortly thereafter.
 {¶ 13} The trial court found that Ivey retained some degree of possession of the property after the transfer in that he continued to live on the property and did not pay rent. Ivey and Sharpe testified that this arrangement arose when Ivey injured both of his feet working on the property for Sharpe. Sharpe stated that she had permitted Ivey to live there rent-free because she had feared that he might otherwise sue her for his injuries. The court acknowledged that it could not find, by clear and convincing evidence, that Ivey had retained control and possession over the entire property, but that he had retained control of at least part of it.
 {¶ 14} The trial court stated that the "most heavily weighed factor" in its decision that Ivey's conveyance to Sharpe had been fraudulent was "that the transfer was not made for reasonably equivalent value." The court concluded that Ivey had transferred the property, valued at $78,000, to Sharpe in exchange for forgiveness of the $8,000 she had loaned to him to purchase the property. The trial court did not factor in the debt to Schmermund that Sharpe assumed because Schmermund was not a party to the transaction and it found that there was no written, recorded agreement reflecting this change with respect to the debt.
 {¶ 15} We agree with the trial court that several of the badges of fraud set forth in R.C. 1336.04(B) had clearly been established. We also agree that Ivey had retained some degree of possession and control over the property by continuing to live there, but that this control appeared to be minimal and entitled to little weight. We disagree, however, with the factor on which the trial court placed the greatest emphasis: whether the transfer to Sharpe was for reasonably equivalent value.
 {¶ 16} The trial court totally discounted Sharpe's assumption of the debt on the property because it was not in writing or recorded and because Schmermund was not directly involved. Thus, the court viewed the exchange between Ivey and Sharpe as the forgiveness of an $8,000 loan in exchange for title to a $78,000 piece of property. Not surprisingly, when viewed this way, the trial court concluded that Ivey and Sharpe had not exchanged items of reasonably equivalent value. In our view, however, the trial court erred in failing to treat the assumption of $74,000 in debt as part of the consideration given in the transaction. Moreover, this agreement is evidenced by a writing dated March 1, 1999 (Defendant's Exhibit F). Plaintiff's Exhibit 33 indicates that this mortgage was recorded on March 3, 1999. These documents undercut the trial court's conclusion that the agreements were neither in writing nor recorded. Furthermore, we do not think it significant that Schmermund was not initially involved in the transaction whereby Sharpe assumed the debt from Ivey. We are unsure why the trial court thought that this fact would affect the value of the exchange between Sharpe and Ivey.
 {¶ 17} We are also unpersuaded that this transaction unfairly favored Schmermund over Ivey's other creditors. Schmermund was protected from Ivey's default prior to this transaction because Sharpe had guaranteed the loan. Ivey had no equity in the property. The property did generate some rental income, but income generally flows to the holder of the title, so if the transfer of title to Sharpe was for reasonably equivalent value, Ivey's other creditors were not entitled to the benefit of the income stream.
 {¶ 18} Gevedon did present expert testimony that there was no consideration in this case. The expert, James Hedrick, relied primarily on Sharpe's filing of a "Statement of Reason for Exemption From Real Property Conveyance Fee" with the County Auditor, which stated that she had not paid for the property. Ivey claimed that the form had simply been filled out incorrectly due to the fact that no money was to be paid apart from the assumption of the debt. Hedrick also testified on the ultimate issue in the case, concluding that the transaction between Sharpe and Ivey had been a fraudulent conveyance because it had lacked consideration. Hedrick did acknowledge that assumption of a mortgage would be consideration but, for reasons that are not entirely clear, he believed that an assumption of a mortgage was "a different situation" than that presented here.
 {¶ 19} In our view, there is no question that Sharpe assumed debt in exchange for receiving the title to 2001 Valley Street from Ivey, and this assumption of debt amounted to consideration over and above the forgiveness of Sharpe's $8,000 personal loan to Ivey. Although the manner in which the auditor's forms were completed may suggest an improper attempt to avoid transfer fees, it does not conclusively establish a failure of consideration. If assumption of $74,000 in debt is factored into the transfer, Ivey did receive a reasonably equivalent value in the transaction. Thus, the trial court erred in relying "most heavily" on the fact that no consideration was given.
 {¶ 20} Although the trial court erred in finding a lack of consideration, it properly concluded that other badges of fraud had been established by the evidence. Thus, pursuant to App.R. 12(C), we will remand this matter to the trial court for it to reconsider whether the evidence established a fraudulent conveyance pursuant to R.C. 1336.04, keeping in mind that there was consideration for the transfer.
 {¶ 21} We note that, from the record, it appears that the property at 2001 Valley Street was reconveyed to Ivey pursuant to the trial court's judgment that the conveyance to Sharpe had been fraudulent. If so, pursuant to our resolution of this assignment of error, the property should be reconveyed from Ivey to Sharpe. However, to avoid the potential for confusion in the real estate records, we will stay this reconveyance for ninety days, within which time the trial court shall reconsider its decision. If the court finds that the conveyance to Sharpe was fraudulent despite the fact that consideration was given, no reconveyance shall be warranted.
 {¶ 22} The second assignment of error is sustained.
 {¶ 23} "I. The Trial Court's Award of Punitive Damages against Rose Sharpe was Clearly improper and constituted an Abuse of Discretion and is against the Manifest weight of the evidence."
 {¶ 24} Under this assignment of error, Ivey and Sharpe contend that, even if there was evidence of a fraudulent conveyance on the part of Ivey, there was no such evidence against Sharpe. Therefore, they argue that the award of punitive damages against Sharpe was against the manifest weight of the evidence.
 {¶ 25} Punitive damages are warranted when actual malice is shown.Locafrance U.S. Corp. v. Interstate Dist. Serv., Inc. (1983),6 Ohio St.3d 198. We have defined actual malice as "a reckless disregard of the consequences or the legal rights of others." Leal v. Holtvogt
(1998), 123 Ohio App.3d 51, 82. There is no evidence in this case that Sharpe acted with actual malice toward Ivey's creditors when she agreed to assume the debt on the 2001 Valley Street property in exchange for the title. She testified that she had not known that any legal action had been filed against Ivey at the time of the transfer and, more generally, had not known of his financial straits. Ivey's testimony supported Sharpe's claim that she had not known about the legal proceedings against him. In sum, no evidence was presented that Sharpe had acted with "reckless disregard of the consequences or the legal rights of others" when she entered the transaction with Ivey because there is no evidence that she knew or should have known that others would be affected by it. Thus, if the trial court again finds that the conveyance from Ivey to Sharpe was fraudulent, punitive damages should be awarded only against Ivey.
 {¶ 26} The first assignment of error is sustained.
 {¶ 27} The judgment of the trial court will be reversed, and the matter will be remanded for further proceedings consistent with this opinion. Presuming that the property in question was reconveyed to Ivey as a result of the trial court's judgment, we grant a stay of ninety days on the reconveyance of the property to Sharpe, during which time the trial court shall conduct the additional proceedings contemplated under the second assignment of error.
Grady, J. and Young, J., concur.