**In re CRESCENT COMMUNITIES, INC., Debtor.**

**Eleanor Beavers Haynes, Trustee, Plaintiff,**

v.

**Jack D. Holstein, Defendant.**

**Bankruptcy No. 02–50593.**

**Adversary No. 02–2402.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

Aug. 13, 2003.

Mark Ditullio, Columbus, OH, for Plaintiff.

Richard T. Ricketts, J. Matthew Fisher, Columbus, OH, for Defendant.

Eleanor Beavers Haynes, Columbus, OH, for Chapter 7 Trustee.

Crescent Communities, Inc., c/o Michael Young, Columbus, OH, Myron N. Terlecky, Columbus, OH, for Debtor.

Joseph E. Balmer, III, Dayton, OH, for Henry H. Stock, Trustee.

## OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

DONALD E. CALHOUN, JR.,
Bankruptcy Judge.

This matter came before the Court upon the Motion for Summary Judgment filed by the Chapter 7 Trustee ("Trustee's Motion"), the Motion of Defendant, Jack D. Holstein, for Summary Judgment ("Holstein's Motion"), Memorandum In Opposition to Motion for Summary Judgment filed by Chapter 7 Trustee ("Holstein's Memo Contra"), Memorandum Contra to Motion of Defendant, Jack D. Holstein, for Summary Judgment ("Trustee's Memo Contra"), Reply to Memorandum Contra Motion of Defendant, Jack D. Holstein, for Summary Judgment ("Holstein's Reply"), and Trustee's Reply to Defendant's Memorandum Contra to Motion for Summary Judgment filed by Chapter 7 Trustee ("Trustee's Reply").

## I.  FACTS

The parties presented factual summaries in their Motions.  Based upon the Court's review of these summaries, the following facts are not disputed:

In January of 1996, Crescent Communities, Inc. ("Crescent") through its president, Michael J. Young ("Young"), purchased 28.368 acres of real estate located in Montgomery County, Ohio, subject to a purchase money mortgage.  Crescent intended on developing the real property as a residential community.  On February 12, 1998, the real property went into foreclosure as a result of Crescent's failure to pay the mortgage.  The real property was appraised at $240,000.00 in the foreclosure proceeding and was sold at sheriff's sale on August 7, 1999.

On or about August 13, 1999, Holstein executed a certain real estate purchase contract with option to repurchase (the "Contract").  At the time of execution of the Contract, the real property was subject to an order authorizing the sale of the property at foreclosure sale, and an auction had taken place where there was a successful third party bidder.  Pursuant to the Contract, Holstein agreed to assist Crescent in reacquiring the real property.  Holstein further agreed to pay the amount necessary for Crescent's right of redemption to be exercised, including interest through the date of payment.  Holstein agreed to pay the purchase price directly to Crescent or on Crescent's behalf to an appropriate authority of Montgomery County, Ohio. In no event, however, was the purchase price to exceed $215,000.00.

The Contract provided that, at closing, Crescent would deliver to Holstein those documents, authorities, records, building plans, site plans, etc., that would be helpful in connection with the ownership, development or resale of the real property.  Pursuant to paragraph three of the Contract, Crescent was given the right to repurchase the real property from Holstein.  The option to repurchase was to be exercised at any time on or before the sixtieth day following the closing by delivering to Holstein an exercise price.  The exercise price was determined as $240,000.00 within fourteen days of closing, $250,000.00 within fourteen to thirty days after closing, and $275,000.00 within thirty to sixty days after closing.

In support of the Trustee's Motion, Young and Crescent state that Holstein had invested in Crescent to help with capital requirements and management of the business in 1997.  Holstein had agreed to personally guarantee certain development loans required for development and to aid Young in the management of business.  In consideration of these things, Crescent agreed to grant Holstein an eighteen per-

cent (18%) interest in Crescent, represented by a share certificate of ninety (90) shares. (Trustee's Motion, Exhibit C.) In response, Holstein claims that at no time was he issued valid shares in Crescent. (Holstein's Memo Contra, Holstein Affidavit.)

The closing occurred on August 13, 1999. At the closing, Crescent, through Young, executed and delivered the general warranty deed to Holstein. Holstein gave to Young, for Crescent, an official check made payable to the Montgomery County, Ohio, Clerk of Courts in the amount of $210,000.00. That amount was the amount necessary to redeem the real property from the sheriff's sale. At the end of the closing, Young took the official check and the general warranty deed to record them at the courthouse. Young deposited the official check with the Montgomery County, Ohio, Clerk of Courts. Young did not get the general warranty deed recorded.

According to Trustee's Motion, Young claimed that the general warranty deed was rejected from being recorded because it contained a faulty legal description. Young further claimed that he and Holstein met with Crescent's surveyor and engineer, Luis G. Riancho, who had performed previous services for Crescent. He, according to Young, refused to correct the legal description until he was paid $6,000.00 of over $20,000.00 previously owed for his surveying services. (Trustee's Motion, p. 4). In response, Holstein fails to comment upon or refute Young's claims regarding the meeting with Riancho.

In April of 2000, Holstein filed complaints in Franklin County and Montgomery County, Ohio, for specific performance under the Contract and for injunctive relief to prevent the sale of the real property. The Franklin County, Ohio, Common Pleas Court complaint was dismissed, and the Montgomery County, Ohio, Common Pleas Court complaint was transferred to the Franklin County, Ohio, Common Pleas Court. On January 17, 2002, Crescent filed its Chapter 7 bankruptcy proceeding.

Holstein filed a motion to lift stay to allow the Franklin County, Ohio Court of Common Pleas ("State Court") to decide the ownership issue of the real estate. On April 10, 2002, this Court entered an order granting the requested relief from stay. The Trustee then moved the State Court to be made a party, but said motion was denied. On July 11, 2002, a State Court magistrate issued a decision and found that the property belonged to Holstein. The State Court magistrate found that the real property had been his since August 13, 1999. Over objections by Young and Crescent, the State Court judge adopted the magistrate's decision through a Journal Entry Overruling Defendant's Objections to Magistrate's Decision filed July 25, 2002, and Adopting Magistrate's Decision filed July 11, 2002 ("Journal Entry"). Young and Crescent filed a notice of appeal, and the appeal is pending before the Tenth District Court of Appeals, Franklin County, Ohio.

In the Journal Entry, the State Court judge made the following statement:

Defendants [referring to Crescent and Young] apparently continue to miss the distinction between trustee's *ownership* powers in the bankruptcy estate, which arise in the property of the debtor as a matter of law immediately upon the filing of a bankruptcy petition, and the trustee's *avoidance* powers, which permit the trustee to avoid certain transfers that may have been made prior to the filing of the petition. 11 U.S.C. 544. This court has ruled that Plaintiff [referring to Holstein] is the legal and equitable owner of the disputed property, and

that the implied consent of the parties....

(Journal Entry, pp. 4–5.)

On August 30, 2002, the Trustee filed her adversary proceeding complaint. In the first cause of action, the Trustee alleges that the "conveyance of an interest in the real estate and other assets of Crescent Communities, Inc. is voidable by the Plaintiff/Trustee since said transfer was accomplished when said corporation was engaged or about to be engaged in a business or transaction for which the remaining assets of the corporation were unreasonably small in relation to business or transaction, and/or the Debtor intended to incur or reasonably should have believed that it would incur debts beyond its ability to pay as they became due." (Complaint, page 2). In the first cause of action, the Trustee further alleges that the conveyance was fraudulent as to the creditors because it was made without receiving a reasonably equivalent value in exchange for said conveyance.

In the second cause of action, the Trustee alleges that the transfer was to an insider and that the debtor corporation retained control of the property transferred after said transfer. (Complaint, page 2). Again, the Trustee alleges that the transfer was of substantially all of the assets of the debtor corporation and that the value of the consideration received was not reasonably equivalent to the value of the assets transferred.

In the third cause of action, the Trustee requests, in the event that she is successful in vacating the transfer of real and personal property of the debtor corporation to the Defendant, that the Defendant be found not to have a lien on said property as a result of and for value given. The Trustee seeks this relief based upon 11 U.S.C. § 548(c).

Through the adversary proceeding, the Trustee seeks to avoid the transfer of the real property and the other personal property pursuant to 11 U.S.C. § 544. The Trustee claims that the transfer was fraudulent under Ohio Revised Code § 1336.04. On October 10, 2002, the Trustee filed a motion to sell the property free and clear of liens in Case No. 02–50593. The Trustee has a buyer for the real property and the personal property for a purchase price of $575,000.00. However, the motion to sell has been continued.

Through Trustee's Motion, she seeks an order granting summary judgment on the basis that the transfer of the real and personal property by Crescent to Holstein was fraudulent. Through Holstein's Motion, he seeks an order granting him summary judgment on the basis that he paid a reasonably equivalent value for the purchase of the assets at issue. The parties have fully briefed this matter for the Court, and it is now ready for decision.

## II. *JURISDICTION*

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(H).

## III. *SUMMARY JUDGMENT STANDARD OF REVIEW*

Rule 56(c) of the Federal Rules of Civil Procedure, incorporated by Bankruptcy Rule 7056 provides:

[Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The purpose of a motion for summary judgment is to determine if genuine issues of material fact exist to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). The party seeking summary judgment bears the initial burden of asserting that the pleadings, depositions, answers to interrogatories, admissions and affidavits establish the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989). The burden on the moving party is discharged by a "showing" that there is an absence of evidence to support a nonmoving party's case. *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. Summary Judgment will be appropriate if the nonmoving party fails to establish the existence of an element essential to its case, and on which it will bear the burden of proof. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. Thus, the ultimate burden of demonstrating the existence of genuine issues of material fact lies with a nonmoving party. *Lashlee*, 570 F.2d at 110–111.

The fact that the parties have filed cross motions for summary judgment does not change the standards upon which courts must evaluate summary judgment motions. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991). Courts still must resolve each motion on its own merits drawing all reasonable inferences against the moving party in each instance. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987). Where genuine issues of material fact remain, neither motion should be granted. *Id.*

## IV. DISCUSSION

### A. 11 U.S.C. § 544

Section 544, which permits a trustee to avoid transfers under applicable law, provides in pertinent part as follows:

[T]he trustee may avoid any transfer of an interest of the debtor in property for any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1).

### B. Ohio Revised Code Sections

Ohio Revised Code § 1336.04(A) provides two alternative means in which a transaction may be deemed fraudulent, namely: (i) actual fraud pursuant to § 1336.04(A)(1); and (ii) constructive fraud pursuant to § 1336.04(A)(2). Specifically, Ohio Revised Code § 1336.04 provides as follows:

(A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of a creditor arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:

(1) With actual intent to hinder, delay, or defraud any creditor of the debtor;

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:

(a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;

(b) The debtor intended to incur, or believed or reasonably should have believed that he would incur,

debts beyond his ability to pay as they became due.

Ohio Revised Code § 1336.04.

■ The Ohio General Assembly has codified certain elements of proof, commonly known as "badges of fraud." O.R.C. § 1336.04(B). In determining actual fraud, consideration is given to the following relevant factors:

(1) Whether the transfer or obligation was to an insider;

(2) Whether the debtor retained possession or control of the property transferred after the transfer;

(3) Whether the transfer was disclosed or concealed;

(4) Whether before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all of the assets of debtor;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

O.R.C. § 1336.04(B). "If the party alleging fraud is able to demonstrate a sufficient number of badges, the burden of proof then shifts to the defendant to prove that the transfer was not fraudulent." *Baker & Sons Equipment Co. v. GSO Equipment Leasing, Inc.* (1993), 87 Ohio App.3d 644, 650, 622 N.E.2d 1113.

■ Constructive fraud requires proof of non-receipt of reasonably equivalent value to the value of the asset transferred. O.R.C. § 1336.04(A)(2). "Unlike actual fraud under O.R.C. § 1336.04(A)(1), constructive fraud under O.R.C. § 1336(A)(2) focuses more on effect of the transaction rather than the intent with which they were undertaken. Constructive fraud may exist when the debtor has no actual intent to hinder, delay, or defraud an existing or future creditor." *Aristocrat Lakewood Nursing Home v. Mayne* (1999), 133 Ohio App.3d 651, 666, 729 N.E.2d 768.

### C. *Analysis*

#### (1) *Badges of Fraud*

■ Ohio law is very clear that "badges of fraud" are circumstances so frequently attending fraudulent transfers, that the inference of fraud arises from them. *See Cardiovascular & Thoracic Surgery of Canton, Inc. v. DiMazzio,* (1987) 37 Ohio App.3d 162, 166, 524 N.E.2d 915. In the present case, the State Court has ruled that Holstein is the legal and equitable owner of the disputed property. This transfer was to an insider. Crescent, a debtor corporation, transferred the property to Holstein, who had previously invested in Crescent to help with capital requirements and management of the business back in 1997. Holstein had personally agreed to guarantee certain development loans required for development and to aid Young in the management of the business. In consideration of these things, Crescent agreed to grant Holstein an eighteen percent (18%) interest. While there is some dispute as to whether or not these

shares were actually issued, the Court finds that Holstein was in a position to assert control of the Debtor. The assertion of control was evidenced by Holstein's involvement in the Contract.

Second, the Debtor obviously retained possession or control of the property transferred after the transfer. Crescent retained both the real property and the personal property. While Holstein eventually did file a complaint in the Franklin County Court of Common Pleas, Crescent retained both possession and control.

Third, in effect, the transfer was not made public and was concealed. Until the filing of the State Court action, a full eight (8) months after the closing, the transfer was not made of record or noticed.

Fourth, the transfer was obviously made after Crescent had been sued or threatened with suit. The transfer resulted after a foreclosure action was filed against Crescent. The very purpose of the transfer resulted from the foreclosure suit against Crescent.

Fifth, in reviewing the bankruptcy schedules, the Court finds that the real property and personal property were virtually and substantially all of the assets of Crescent. The transfer to Holstein resulted in the transfer of substantially all of the assets of Crescent, with the exception of the name.

In reviewing this matter, the Court cannot make a finding as to badges six and seven. The parties presented no facts showing that the Debtor absconded and none showing that the Debtor removed or concealed assets. Badges six and seven have not been proven in the present case.

However, the Court does find that the transfer was for considerably less than the reasonable equivalent of the value of the assets transferred. In reviewing the Contract, it shows that Crescent was to transfer more than its right of redemption in the real estate to Holstein in exchange for payment of the right to redemption amount, being $210,000.00. As stated in the Contract and as stated in the magistrate's decision adopted by the State Court Journal Entry, Holstein purchased and received a recordable general warranty deed to the real property; a resolution of seller's board of directors, duly served by an appropriate officer of seller, authorizing the transaction contemplated by the Contract; and such other documents as could reasonably be determined by Holstein's legal counsel to be necessary or appropriate in order to consummate the transactions contemplated by the Contract (including, but not limited to, plans, engineering or architectural drawings, building plans, site plans, and building permit applications and permits) used by Crescent, or that would be useful to Holstein, in connection with the ownership, development or resale of the Property. (Contract, paragraph 5.)

Within the foreclosure action, the real estate, and only the real estate was appraised at $240,000.00. Under paragraph 2 of the Contract, Holstein agreed to pay a redemption amount of up to $215,000.00 for the real property and all of the plans, permits, drawings, and site plans. Holstein only paid $210,000.00. Based upon the foregoing and as for badge number eight, the Court finds that the transfer was for considerably less than the reasonable equivalent value of the assets transferred.

Finally, in reviewing Crescent's bankruptcy schedules, they clearly show that the Debtor's assets after subtracting the value of the above assets, total $9,464.00.[1]

---

**1.** On Schedule A, Debtor listed the same real estate as described herein as having a market

At the same time as the above transfers, Henry H. Stick, Trustee, had a claim in excess of $119,000.00, and Luis Riancho had a claim in excess of $20,000.00.[2] Further, the Court finds that this transfer left Crescent with unreasonably small assets in relation to its historical level of assets. As stated above, the assets were transferred without the Debtor receiving a reasonably equivalent value in exchange for the transfer. *See Aristocrat,* 133 Ohio App.3d at 668, 729 N.E.2d 768. Based upon the foregoing, the Court finds that Crescent was insolvent or became insolvent shortly after the transfer was made. The Court finds that the Ninth and Tenth badges of fraud have been proven by the Trustee.

## V. CONCLUSION

Based upon the foregoing, the Court finds that there is competent, credible evidence to support a finding that the transfer from Crescent to Holstein was a fraudulent transfer under O.R.C. § 1336.04(A)(1). The numerous badges of fraud shown in this case support such a finding. *Profeta v. Lombardo,* (1991) 75 Ohio App.3d 621, 628, 600 N.E.2d 360. The Court finds that the Defendant has failed to rebut presumption of fraud created by the badges of the fraud proven by the Trustee. Based upon the foregoing, this Court finds and concludes that the transfer is voided pursuant to 11 U.S.C. § 544.

The Court recognizes that Trustee seeks relief based upon 11 U.S.C. § 548(c) in the third cause of action of the adversary proceeding. However, neither party argued nor briefed this issue in their Motions. The Court is unable to dispose of this issue properly upon the Motions as they were presented.

Based upon the foregoing, the Court hereby grants the Trustee's Motion for Summary Judgment, in part, by ruling that the transfer is voided pursuant to 11 U.S.C. § 544, and denies Holstein's Motion for Summary Judgment.

IT IS SO ORDERED.

---

value of $600,000.00. On Schedule B, Debtor listed: a checking account containing $64.00; a security deposit of $9,400.00, a counterclaim against Jack Holstein for breach of agreement at $1.00; and plans for the Crescent Pond Estates Subdivision as having a market value of $30,000.00. No other assets are listed in the schedules found in Case No. 02–50593.

**2.** Proof of Claim No. 1 filed in Case No. 02–50593 states a claim on behalf of Henry H. Stick, Trustee, for money loaned in the amount of $119,933.15. Attached to the Proof of Claim form is a Certificate of Judgment filed in the Montgomery County Court of Common Pleas on June 7, 2000. The Certificate of Judgment is based upon a judgment granted in the case known as *Henry H. Stick, Trustee v. Vista Ridge Inc., et al.,* Case No. 96 CV 0146. Proof of Claim No. 2 is a claim in the amount of $23,500.00 by Luis G. Riancho Associates, Inc. in the amount of $23,500.00. Attached to that Proof of Claim are invoices for the time period of May 1994 through November, 2001.

Further, Plaintiff named Henry H. Stick, Trustee, as a defendant in this adversary proceeding. In his answer, Mr. Stick stated that he has a lien on the subject real property by virtue of a Certificate of Judgment issued against Michael J. Young and Crescent Communities, Inc., in the amount of $55,000.00 with interest at 18% per annum from June 29, 1995 plus costs, issued by the Montgomery County Common Pleas Court, No. 00–JG–07–17953 and filed in the Franklin County Common Pleas Court on July 7, 2000.